TEXAS COMMERCE BANK REAGAN Through its Successor in Interest, TEXAS COMMERCE BANK NATIONAL ASSOCIATION, Appellant,

v.

LEBCO CONSTRUCTORS, INC., et al., Appellees.

No. 13–91–423–CV.

Court of Appeals of Texas, Corpus Christi.

June 30, 1993.

Rehearing Overruled Sept. 29, 1993.

Bob E. Shannon, Patrick O. Keel, Baker & Botts, Austin, Lillian Flurry, Baker & Botts, Houston, for appellant.

Joe H. Reynolds, Michael T. Trefny, Reynolds & Cunningham, K. Charles Peterson, Bishop, Peterson & Sharp, James M. Whorley, J. Cary Gray, James L. Reed, Jr., Looper, Reed, Mark & McGraw, Houston, for appellees.

Before GILBERTO HINOJOSA, DORSEY and FEDERICO G. HINOJOSA, Jr., JJ.

## OPINION

GILBERTO HINOJOSA, Justice.

Lebco, Inc. (Lebco), and Spencer/Center Development Partners, Ltd., Spencer/Center Retail Partners, Ltd., GBNF, Inc., and David Askanase, Trustee [1] (collectively the Spencer parties) sued Texas Commerce Bank–Reagan for fraud and negligent misrepresentation in connection with the bank's refusal to fund construction loans that it had already approved. The trial court rendered judgment in accordance with the jury verdict against the bank and awarded damages of $2,500,000 to Lebco and $300,000 to the Spencer parties. The bank appeals by three points of error. In addition, Lebco brings three and the Spencer parties bring five cross points.

The Spencer parties planned to develop a shopping center, Spencer Center, hired Lebco as general contractor for the project, and sought financing from the bank in the form

---

1. Successor-in-interest to Lance McFaddin, who was in bankruptcy at the time suit was filed.

of a $5,000,000 construction loan. In addition, Lance McFaddin, who was one of the Spencer parties before he went bankrupt and was replaced by Askanase, also sought a $2,820,000 land acquisition and development loan in connection with the future expansion of Spencer Center onto an adjoining lot. The bank approved the loan requests and assured the Spencer parties that it would close and fund the loans as soon as its attorneys had completed the loan documents. In addition, according to the Spencer parties and Lebco, the bank told them that construction could actually begin before closing of the loans if Lebco would send a contrary letter to the bank stating that construction would not begin until after the loans closed.

Lebco provided the letter that the bank requested, but contrary to the representations in the letter began construction on the project before the loans closed. The Spencer parties contend that they kept the bank informed of the progress of construction. However, shortly before the loans were scheduled to close, the bank decided not to fund the loans because of what the bank claimed to be unauthorized commencement of construction by Lebco. The Spencer parties were then unable to obtain alternate financing.

Lebco initiated the present lawsuit against the bank and the Spencer parties, and the Spencer parties brought a cross-action against the bank. After the trial court disposed of all other claims by directed verdict, the jury found that the bank's failure to fund the loans after representing that it would do so amounted to both fraud and negligent misrepresentation, and the jury assessed damages against the bank in favor of both Lebco and the Spencer parties.

### BANK'S POINTS OF ERROR

In the present appeal, the bank does not challenge its liability generally under Lebco's and the Spencer parties' causes of action for fraud and negligent misrepresentation in connection with the bank's failure to fund the loans. Rather, the issues in the present appeal center around the damages claimed to have resulted from the bank's misrepresentations. Specifically, by its first and second points of error the bank complains of the trial court's failure to submit proper instructions regarding damages and challenges the sufficiency of the evidence to support the damage award to Lebco.

Lebco and the Spencer parties relied on loans from the bank to facilitate the construction of Spencer Center. Although Lebco was not a party to the bank's agreement to loan money to the Spencer parties, Lebco's construction contract with the Spencer parties depended upon the loans being funded, and both Lebco and the Spencer parties relied upon the bank's representations to each that the loans would be funded. As a consequence of the bank's later refusal to fund these loans, the Spencer parties were financially unable to complete the project or to pay for the work that Lebco had already done. The project thus failed, and Lebco and the Spencer parties suffered out-of-pocket losses due to these expenses associated with partial construction.

■■■ With regard to Lebco's claim for fraudulent misrepresentation, the victim is entitled to recover the actual amount of his loss resulting directly and proximately from the fraud practiced on him. *Morriss–Buick Co. v. Pondrom*, 131 Tex. 98, 113 S.W.2d 889 (Tex.Comm'n App.1938, opinion adopted); *Kneip v. UnitedBank–Victoria*, 774 S.W.2d 757, 759 (Tex.App.—Corpus Christi 1989, no writ). Generally, when the fraud is associated with the purchase or transfer of property, the victim is entitled to recover the difference between the value of that parted with and that received. In addition, the victim is also entitled to recover for pecuniary loss suffered otherwise as a consequence of his reliance upon the misrepresentation. *Wright v. Carpenter*, 579 S.W.2d 575, 578 (Tex.Civ. App.—Corpus Christi 1979, writ ref'd n.r.e.); *El Paso Development Co. v. Ravel*, 339 S.W.2d 360, 365 (Tex.Civ.App.—El Paso 1960, writ ref'd n.r.e.). For instance, the victim may recover special or consequential damages for losses on improvements to property purchased as a result of misrepresentation. *See Trenholm v. Ratcliff*, 646 S.W.2d 927, 933 (Tex.1983). When the fraudulent conduct does not involve the transfer of property, the victim necessarily proves his claim

by proving special or consequential damages of this nature. *McClure v. Duggan*, 674 F.Supp. 211, 222 (N.D.Tex.1987).[2]

In *Trenholm*, a developer trying to sell lots in his subdivision fraudulently misrepresented to a potential builder that an adjacent mobile home park would be moved. In reliance on this representation, the builder purchased several lots and built homes on them. However, the mobile home park remained, and the builder subsequently sold these homes at a loss because the continued presence of the mobile home park depressed their value. The Texas Supreme Court held that the builder was entitled to recover the amount of his out-of-pocket loss on the homes, as well as a ten percent net profit which he otherwise could have expected to receive on the homes absent the presence of the adjacent mobile home park. *Id.* at 933.

In *Khalaf v. Williams*, 814 S.W.2d 854 (Tex.App.—Houston [1st Dist.] 1991, no writ), Williams contracted to build a night club for Khalaf in exchange for a partnership interest in the club. After Williams began construction, he learned that Khalaf had incorporated the night club and excluded Williams from ownership. Williams abandoned construction and sued Khalaf for,

among other things, fraudulently inducing him to begin construction by promising him a partnership interest. The court of appeals found sufficient evidence to support an award for fraud based on Williams' losses during construction and the value of the promised partnership interest. *Id.* at 857.

■ As in *Trenholm* and *Khalaf*, in the present case when Lebco began construction as the general contractor he relied upon certain fraudulent misrepresentations, i.e., that the loan would be funded so that the owner could pay him for his work, that affected his compensation and profits on the project. We hold that Lebco is entitled to recover damages for these losses associated with partial construction of the failed project. Lebco's special or consequential damages due to its reliance on the misrepresentation must be measured by the difference between the amount that it was paid and the amount that it would otherwise have been paid had the loan been funded.

■ With regard to Lebco's claim for negligent misrepresentation, the Texas Supreme Court in *Federal Land Bank Association v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991)[3] gen-

---

**2.** Although most lender-liability suits for failure to fund a loan are brought by the borrower on the contract itself, since in the present case Lebco was not a party to the loan agreement, it is relegated to causes of action against the bank for misrepresentation rather than for breach of contract. Nevertheless, breach of contract cases are instructive generally concerning the measure of special or consequential damages allowed based on reliance upon funding of the loan. The basic common law measure of damages for breach of a loan agreement is the difference between the contractual rate of interest and the rate of interest that the borrower is required to pay to obtain the money from another source; however, special or consequential damages reasonably within the contemplation of the parties at the time the agreement was made may also be recovered. *Investors, Inc. v. Hadley*, 738 S.W.2d 737, 739 (Tex.App.—Austin 1987, writ denied); *Collin County Savings & Loan v. Miller Lumber Co.*, 653 S.W.2d 114, 118–19 (Tex.App.—Dallas 1983, no writ); *Davis v. Small Business Investment Co.*, 535 S.W.2d 740, 743 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.).

Thus the breach of a contract to lend money to one who intended to use it for a specific business venture with the expectation of deriving a profit therefrom would give rise to recovery of damages for expenses and such net profits as the

borrower could show he would have made on the venture had the contract been performed. *Morgan v. Young*, 203 S.W.2d 837 (Tex.Civ.App.—Beaumont 1947, writ ref'd n.r.e.); 28 Tex.Jur.3d *Damages* § 53 (1983); *see also Nance v. Resolution Trust Corp.*, 803 S.W.2d 323 (Tex.App.—San Antonio 1990), *writ denied*, 813 S.W.2d 154 (Tex. 1991); *First Texas Savings Association v. Dicker Center, Inc.*, 631 S.W.2d 179, 187 (Tex.App.—Tyler 1982, no writ); *Pasadena Associates v. Connor*, 460 S.W.2d 473, 478 (Tex.Civ.App.—Houston [14th Dist.] 1970, writ ref'd n.r.e.). In *Morgan*, for instance, when the lender breached a contract to lend money for the production of a crop, the borrower was entitled to recover net profits and the expenses incurred in preparing for the crop prior to breach. *Morgan*, 203 S.W.2d at 853–54.

**3.** In that case, the Sloanes applied for a loan to begin the business of raising chickens. When the bank represented that their loan had been approved, the Sloanes began construction on their business property. The bank later denied their loan and the Sloanes sued for negligent misrepresentation, claiming among other things property damages due to site preparation.

erally adopted the measure of damages found in Restatement (Second) of Torts § 552B (1977), which includes in section 552B(1)(b) recovery for special or consequential damages in the form of "pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation." A cause of action for negligent misrepresentation thus includes the same elements of special and consequential damages as a cause of action for fraudulent misrepresentation. In the present case, therefore, Lebco was entitled to recover damages for its losses under either theory.

By its first point of error the bank complains that the trial court failed to instruct the jury concerning the proper elements of damages for fraud and negligent misrepresentation.

Conditioned upon the jury's findings that the bank's fraud and negligent misrepresentation proximately caused damages to Lebco and the Spencer parties, jury questions 3 (with regard to fraud) and 7 (with regard to negligent misrepresentation) merely asked the jury to find what sum of money would fairly and reasonably compensate Lebco and the Spencer parties for such damages.

■ Damages must be measured by a legal standard, and that standard must be used to guide the fact finder in determining what sum would compensate the injured party. *Jackson v. Fontaine's Clinics, Inc.*, 499 S.W.2d 87, 90 (Tex.1973). While the form of submission of a particular special issue is left to the sound discretion of the court, it is essential that the submission be sufficient to enable the jury to make an award of damages on proper grounds and correct principles of law. A submission is fatally defective if it fails to guide the jury to a finding on any proper legal measure of damages. *Id.* at 90; *Chrysler Corp. v. McMorries*, 657 S.W.2d 858, 862 (Tex.App.—Amarillo 1983, no writ); *Sawyer v. Fitts*, 630 S.W.2d 872, 875 (Tex. App.—Fort Worth 1982, no writ).

■ Under the common law, the proper measure of damages is a question of law for the court and the court's charge should limit the jury's consideration to the specific facts that are properly a part of the damages allowable. *McMorries*, 657 S.W.2d at 862; *Johnson v. Willis*, 596 S.W.2d 256, 262 (Tex. Civ.App.—Waco 1980), *writ ref'd n.r.e.*, 603 S.W.2d 828 (Tex.1980). Thus, an issue which asks merely what amount would reasonably and fairly compensate the plaintiff for damages suffered as a result of the occurrence, without further instruction concerning what elements of damages should be considered, improperly permits the jury to take into account anything that it may consider as constituting "damages." *Stewart v. Moody*, 597 S.W.2d 556, 558 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.).

■ However, when the trial court has erroneously failed to include instructions on the proper measure of damages, it is the complaining party's burden both to object to the charge and to tender such instructions in substantially correct form. *Willis v. Maverick*, 760 S.W.2d 642, 647 (Tex.1988); *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 538 n. 4 (Tex.1981); *National Fire Insurance Co. v. Valero Energy Corp.*, 777 S.W.2d 501, 508 (Tex.App.—Corpus Christi 1989, writ denied); Tex.R.Civ.P. 278.

In the present case, the bank objected to the omission of any instructions setting out the elements of damages to be considered by the jury[4] and tendered the following instruction:

In connection with the claims for fraud and negligent misrepresentation, you may consider the following elements of damages, if any, and none other:

A. Any "out-of-pocket" expenses paid as a direct and proximate result of the fraud or misrepresentations, if any, and

B. The difference, if any, between the price paid, or the value parted with, and the value received. The difference in

---

4. Although the bank inadvertently objected to Jury Question 6, which inquired whether the negligent misrepresentation proximately caused damages, rather than to Jury Question 7, inquiring about the amount of those damages, these two jury questions were interrelated and the bank thereby plainly pointed out to the trial court its objection that the jury was not being instructed concerning the proper measure of negligent misrepresentation damages. *See State Department of Highways & Public Transportation v. Payne*, 838 S.W.2d 235, 241 (Tex.1992).

value, if any, shall be determined at the time and place that value was or was to be received.

Lost profits, if any, are not recoverable and should be disregarded in answering this question.

Although this instruction does allow generally for out-of-pocket expenses in accordance with recovery of consequential damages for fraud and negligent misrepresentation, its express denial of lost profits is incorrect to the extent that it suggests that the profits which Lebco expected to recover under its contract with the Spencer parties could not be recovered as consequential damages. *See Sloane,* 825 S.W.2d at 442; *Trenholm,* 646 S.W.2d at 933; *Khalaf,* 814 S.W.2d at 857.

■■■■ Tender of an instruction that misstates the law or misleads the jury is not in substantially correct form and does not preserve error concerning the trial court's failure to submit such an instruction in substantially correct form. *See Willis,* 760 S.W.2d at 647; *Placencio v. Allied Industrial International, Inc.,* 724 S.W.2d 20, 21 (Tex. 1987); *National Fire Insurance Co.,* 777 S.W.2d at 508; *see also Texaco, Inc. v. Pennzoil Co.,* 729 S.W.2d 768, 822 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). The bank thus failed to preserve error by the tender of an instruction incorrectly limiting damages. We overrule the bank's first point of error.

By its second point of error the bank challenges the factual sufficiency of the evidence to support the jury's award of $2,500,-000 to Lebco.

In considering a "no evidence," "insufficient evidence" or "against the great weight and preponderance of the evidence" point of error, we will follow the well-established tests set forth in *Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986); *Dyson v. Olin Corp.,* 692 S.W.2d 456 (Tex.1985); *Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400 (Tex. 1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.

1965); *Allied Finance Co. v. Garza,* 626 S.W.2d 120 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.); and Calvert, *No Evidence and Insufficient Evidence Points of Error,* 38 Texas L.Rev. 361 (1960).

Lebco presented evidence of losses incurred directly in connection with partial construction of the Spencer Center project, as well as of a subsequent decline in business and loss of profits allegedly due to the effect of the failure of the Spencer Center project on Lebco's credit and its business and professional standing in the community. However, the trial court orally instructed the jury to consider evidence of the subsequent losses only on the issue of exemplary damages.[5]

■■■ Evidence admitted only for a particular limited purpose is subject to consideration for only that purpose and may not be weighed in determining the sufficiency of the evidence to show a matter outside of the specific limitation. *See Davis v. Gale,* 160 Tex. 309, 330 S.W.2d 610, 612–13 (1960); *Cook Drilling Co. v. Gulf Oil Corp.,* 139 Tex. 80, 161 S.W.2d 1035 (1942); *Fitzgerald v. LaFreniere,* 658 S.W.2d 692, 696 (Tex.App.—Corpus Christi 1983), *rev'd on other grounds,* 669 S.W.2d 117 (Tex.1984); *Texas Liquor Control Board v. Luke,* 340 S.W.2d 504, 507 (Tex.Civ.App.—Beaumont 1960, no writ); *Scull v. Jackson,* 131 S.W.2d 280 (Tex.Civ. App.—Texarkana 1939, no writ).

■■■ Therefore, with the present limitation to consideration only in assessing exemplary damages, Lebco's evidence of subsequent losses could not be considered in determining the actual consequential damages flowing from the fraud and negligent misrepresentation of the bank. We are then left with only the evidence of direct losses incurred in connection with Lebco's partial construction of the Spencer Center project.

The amount of Lebco's direct losses on the Spencer Center project as a result of the bank's fraud was some controverted amount

---

5. Tex.R.Civ.Evid. 105(a) provides for the trial court to restrict evidence to its proper scope and instruct the jury accordingly when such evidence is admissible only for a limited purpose:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly. . . .

between the Bank's suggestion of $290,000 and Lebco's claim for $1,730,470. Arthur LeBlanc, the president of Lebco, testified that he figured Lebco's total direct losses at $1,730,470.36. The damages awarded by the jury of $2,500,000 was clearly above these direct losses and probably improperly took into account evidence of Lebco's subsequent decline in business and loss of profits.[6] We have no method to gauge how much of that $2,500,000 assessment may be attributed to direct losses, and how much to future losses. However, the bank as appellant has itself asked that we suggest remittitur in the amount by which we conclude that the jury's assessment lacks evidentiary support; in other words that we suggest remittitur to the highest amount of direct loss damages supportable by the evidence.

We conclude that the evidence presented to show direct loss damages was insufficient to support any award in excess of Lebco's claim for $1,730,470. Accordingly, we sustain the bank's second point of error and suggest a remittitur by Lebco in order that its damages conform to that amount. *See Larson v. Cactus Utility Co.*, 730 S.W.2d 640, 641 (Tex. 1987).

By its third point of error the bank complains that the trial court failed to properly equalize peremptory challenges between the parties. Prior to the selection of the jury, the bank filed a motion requesting the trial court to equalize peremptory challenges such that the bank would have six and Lebco and Spencer would each have three. However, the trial court gave Lebco and Ron's Enterprises, Inc., one of Lebco's subcontractors, six peremptory challenges, gave Spencer four, and gave the bank eight. The bank contends that the combined allocation of ten to Lebco, Ron's, and Spencer, as compared to the bank's eight was error and resulted in a materially unfair trial.

 The duty of the trial judge to alter the normal allocation of peremptory challenges in multiple party cases is set forth in Texas Rule of Civil Procedure 233. The threshold question to be answered in allocating peremptory challenges when multiple litigants are involved on one side of a lawsuit is whether any of those litigants on the same side are antagonistic with respect to an issue of fact that the jury will decide. *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 5 (Tex. 1986) (on motion for rehearing); *Garcia v. Central Power & Light Co.*, 704 S.W.2d 734, 736 (Tex.1986); *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 918 (Tex.1979); Tex. R.Civ.P. 233. If no antagonism exists, each side must receive the same number of strikes. *Garcia*, 704 S.W.2d at 736; *Patterson*, 592 S.W.2d at 918.

 The existence of antagonism is a question of law that must be finally determined after voir dire and prior to the exercise of the strikes of the parties, based upon information gleaned from pleadings, pretrial discovery, information and representations made during voir dire, and any other information brought to the attention of the trial court. *Scurlock*, 724 S.W.2d at 5; *Garcia*, 704 S.W.2d at 736–37; *Patterson*, 592 S.W.2d at 919.

 However, any error in the trial court's allocation of jury strikes among the parties must be preserved by a timely objection. *See In the Interest of T.E.T.*, 603 S.W.2d 793, 798 (Tex.1980); *Patterson*, 592 S.W.2d at 921; *Pouncy v. Garner*, 626 S.W.2d 337, 340 (Tex.App.—Tyler 1981, writ ref'd n.r.e.); *Ferguson v. Beal*, 588 S.W.2d 651, 655 (Tex.Civ.App.—Houston [14th Dist.] 1979, writ ref'd n.r.e.). Under the guidance of *Scurlock, Garcia*, and *Patterson*, the proper time to object to the trial court's allocation of strikes would be at the same time that the determination of antagonism by the trial court should be made—after voir dire and prior to the exercise of the strikes as so allocated by the court. Any pre-voir-dire objection to a suggestion by the trial court of how it intends to allocate strikes would be premature and would fail to take into account the significance of information and representations made during voir dire upon the trial court's determination of antagonism between the parties.

---

6. LeBlanc testified to net operating losses of over $2 million, and lost profits of over $1.5 million, allegedly as a result of the failure of the Spencer Center project.

Generally, a premature objection is insufficient to preserve error. *Farm Services, Inc. v. Gonzales*, 756 S.W.2d 747, 750 (Tex.App.—Corpus Christi 1988, writ denied). Specifically, a premature interchange between judge and attorneys at a pretrial hearing is not sufficient to preserve error concerning rulings to be made at a later time at trial. *See Barras v. Monsanto Co.*, 831 S.W.2d 859, 864 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

In the present case, the bank objected to the allocation of peremptory challenges at a pretrial hearing before voir dire began. The trial judge heard argument from all parties and then announced his decision as to how he intended to allocate strikes. However, after voir dire examination of the jury, there was no further objection or discussion of record about the allocation of jury strikes. In addition, before the jury was sworn and the rest of the panel was excused, the trial judge finally asked all parties if they had any objections to the jury, to which the bank replied that it had no objection. We hold that the bank failed to preserve error concerning the trial court's allocation of jury strikes. We overrule the bank's third point of error.

### CROSS POINTS

By its second and third cross points, Lebco attempts to resurrect its theory of subsequent-loss damages, as we have already briefly discussed with regard to the bank's second point of error challenging factual sufficiency. Specifically, by its second cross point of error, Lebco contends that the trial court erred in orally instructing the jury to consider evidence of its subsequent losses only on the issue of exemplary damages. However, Lebco not only acquiesced in the trial court's giving of this limiting instruction to the jury but specifically represented to the trial court that this evidence was being offered only for the limited purpose of exemplary damages. We overrule Lebco's second cross point of error.

Lebco contends by its third cross point of error that the trial court erred in refusing to allow it to amend its petition to include a claim for consequential damages based on its subsequent decline in business and loss of profits. A docket control order in the present case placed a filing deadline of May 1, 1990, for the amendment of pleadings. Nevertheless, Lebco attempted unsuccessfully to file a Second Amended Original Petition on several occasions after the May 1st deadline but earlier than seven days before the date of trial.[7] The bank opposed Lebco's attempts to amend on the grounds of unfair surprise and violation of the pleading deadline set by the trial court. Specifically, the bank claimed unfair surprise based on the fact that the amended petition changed Lebco's theory of recovery from merely the direct losses suffered on the Spencer Center project to now include significantly increased damages based on the newly-asserted theory of recovery.

Lebco argues that Texas Rule of Civil Procedure 63 allowed it to amend its petition prior to seven days before trial without leave of court and without regard to the provisions of the pretrial docket control order. Rule 63 provides that:

Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, *or after such time as may be ordered by the judge under Rule 166*, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

Tex.R.Civ.P. 63 (emphasis added).

The bank relies upon Texas Rule of Civil Procedure 166, pursuant to which the pres-

---

7. On July 20, 1990, Lebco moved to amend its petition, but the trial court denied the motion. Later, without requesting leave, Lebco filed its amended petition on November 16, 1990, but the amended petition was stricken by the trial court. Finally, Lebco again moved to amend on December 20, 1990, and the trial court again denied Lebco's motion.

ent docket control order was entered. Rule 166 provides that the trial court may hold a pretrial conference to consider, among other things, "[t]he necessity or desirability of amendments to the pleadings," and thereafter the trial court may make an order reciting "the amendments allowed to the pleadings, [and] the time within which same may be filed." We agree with the bank that under the provisions of Rule 63 Lebco needed leave of court to file its amended petition after the Rule 166 pleading deadline passed.

However, a trial court still has *no* discretion to refuse such an amendment unless: (1) the opposing party presents evidence of surprise or prejudice; or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment. *Greenhalgh v. Service Lloyds Insurance Co.*, 787 S.W.2d 938, 939 (Tex.1990); *Hardin v. Hardin*, 597 S.W.2d 347 (Tex. 1980); *Rauscher Pierce Refsnes, Inc. v. Koenig*, 794 S.W.2d 514, 516 (Tex.App.—Corpus Christi 1990, writ denied). The burden of showing prejudice or surprise generally rests on the party resisting the amendment. *Greenhalgh*, 787 S.W.2d at 939. However, the trial court may conclude that the amendment is on its face calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial. *Greenhalgh*, 787 S.W.2d at 940; *Hardin*, 597 S.W.2d at 349. Moreover, in *Chapin & Chapin, Inc. v. Texas Sand & Gravel Co.*, 844 S.W.2d 664 (Tex.1992), the Texas Supreme Court has indicated that it will analyze the trial court's determination of Rule 63 motions to amend based on whether the proposed amendment is more in the nature of a procedural change, under which the party resisting the amendment maintains the burden to show evidence of surprise or prejudice, or a substantive change which would alter the nature of the trial itself and which the trial judge retains discretion to deny.

Although a mere increase in the amount of damages claimed may be more in the nature of a procedural change, *see Greenhalgh*, in the present case the amendment not only increased the amount of damages

claimed but changed the theory of recovery from simply the out-of-pocket damages suffered on the Spencer Center project to now include consequential damages based on Lebco's subsequent decline in business and loss of profits generally, allegedly due to the subsequent effect of the failure of the Spencer Center project on Lebco's credit and professional standing. The bank should be entitled to rely on the narrower theory of recovery alleged in Lebco's prior pleadings in the same manner that it would rely on any other substantive allegations in an opponent's pleadings. Because the present amendment not only increased the dollar amount of damages sought, but also raised new substantive matters concerning the causal theory of recovery, it would thus have had the effect of reshaping the cause of action and altering the nature of the trial, and the trial court properly denied Lebco leave to file it. We overrule Lebco's third cross point of error.

By their first cross point of error, the Spencer parties complain that the trial court erred in grouping their claims in the jury questions regarding damages and granting a joint award in the judgment, because each of the Spencer parties is a separate entity (Spencer/Center Development; Spencer/Center Retail; and Gilliam Interests), each of which offered evidence of separate and distinct damages, and each of which is entitled to a separate award. We hold that the Spencer parties waived error by their submission of a proposed judgment which groups their claims in a joint award.

The Spencer parties on February 21, 1991, filed a post-verdict pleading (Response of Spencer Plaintiffs to [Lebco's] Motion for Entry of Judgment) in which they argued that judgment may not properly be entered because of the improper grouping of the three separate Spencer parties in the verdict. However, on March 5, 1991, by a subsequent post-verdict pleading (Reply of Spencer Plaintiffs to Texas Commerce Bank–Reagan's Attorneys' Fee Argument) the Spencer parties, in addition to arguing that they are entitled to attorney's fees, also submitted a proposed final judgment which included the following:

ORDERED that Spencer/Center Retail Partners, Ltd., Spencer/Center Development Partners, Ltd., and GBNF, Inc., formerly known as Lance Gilliam, Inc., d/b/a Gilliam Interests, jointly, do have and recover of Texas Commerce Bank National Association the sum of Eight Hundred Sixty-five Thousand Eighty-four and No/100 Dollars ($865,084.00), plus interest from the date of judgment until paid at the rate of ten percent (10%) per annum, compounded daily, plus costs of court, together with interest thereon, for all of which let execution issue if not timely paid. In addition, in the event this case is appealed as to the Spencer Plaintiffs, attorney's fees are awarded in the amount of $30,000.00 for the Court of Appeals and $20,000.00 for the Texas Supreme Court. ....

On March 28, 1991, the trial court entered final judgment grouping the parties in substantially the same manner as in the proposed judgment.

■ If a litigant is displeased with the verdict, but nevertheless moves for judgment thereon, such a motion will generally be considered an acquiescence in the verdict which will foreclose a subsequent attack on appeal; one cannot thus take inconsistent positions with regard to the correctness of a judgment. *Litton Industrial Products, Inc. v. Gammage*, 668 S.W.2d 319, 321–22 (Tex.1984); *Miner–Dederick Construction Corp. v. Mid-County Rental Service, Inc.*, 603 S.W.2d 193, 198 (Tex.1980); 4 R. McDonald, Texas Civil Practice § 26:7 (1992); *see also Trevino v. Espinosa*, 718 S.W.2d 848, 853 (Tex.App.—Corpus Christi 1986, no writ) (by cross point appellee complained that the judgment failed to make the appellants jointly and severally liable for damages, but appellee had submitted a proposed judgment in accordance with the verdict apportioning damages separately for each appellant based on individual percentages of liability; we thus held that appellee waived her cross point).

■ An exception exists by which a party desiring to initiate the appellate process may move the court to render judgment on an erroneous verdict without being bound by its terms; to preserve a complaint about the judgment entered, the party moving for entry of judgment should move for entry only as to form while noting its disagreement with the content and result of the judgment or some portion thereof. Specifically, that party should in the motion itself expressly complain of error in the verdict and request new trial, relegating its request for judgment to an alternative argument concerning the form of that judgment if the court is not inclined to grant new trial. *See First National Bank v. Fojtik*, 775 S.W.2d 632 (Tex.1989); *Melissinos v. Phamanivong*, 823 S.W.2d 339, 342 (Tex.App.—Texarkana 1991, writ denied); *Transmission Exchange Inc. v. Long*, 821 S.W.2d 265, 275 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *cf. Litton*, 668 S.W.2d at 322 (the only indication of disagreement with the verdict was in a separately filed trial brief).

In the present case, the Spencer parties' proposed judgment conformed with the joint award in the verdict which they now attack; yet they did not qualify that proposed judgment or indicate any disagreement with the content and result of the portion of that judgment about which they now complain. Moreover, we believe that the earlier-filed response challenging the joint award was insufficient to preserve error in light of the Spencer parties' apparent acquiescence to the terms of the subsequently-filed proposed judgment. We overrule the Spencer parties' first cross point.

■ By their second cross point the Spencer parties complain that the trial court erred in failing to grant GBNF, Inc. the damages awarded by the jury. Along with the other Spencer parties (Spencer/Center Retail Partners, Ltd. and Spencer/Center Development Partners, Ltd.), GBNF was also jointly awarded $300,000 in damages in the jury's verdict. However, the trial court failed to include GBNF with the other Spencer parties in its judgment.

. The bank argues that the Spencer parties failed to preserve this point by failing to bring its complaint to the trial court's attention. Texas Rule of Appellate Procedure 52(a) provides that:

In order to preserve a complaint for appellate review, a party must have pre-

sented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion. If the trial judge refuses to rule, an objection to the court's refusal to rule is sufficient to preserve the complaint. It is not necessary to formally except to rulings or orders of the trial court.

A post-verdict motion for judgment is generally sufficient to preserve error in the judgment under Rule 52(a). *Emerson v. Tunnell,* 793 S.W.2d 947 (Tex.1990) (per curiam). In *Emerson,* the Texas Supreme Court found that such a motion adequately presents the desired ruling to the trial court, and that the trial court's failure to comply with that request in the particular manner complained about on appeal constitutes an adverse ruling and preserves error under Rule 52(a). *Id.* at 948.[8]

In the present case, by their March 5, 1991, proposed final judgment mentioned in our discussion of the previous point of error, the Spencer parties included GBNF as a party jointly entitled to recover the amount awarded by the jury to the three Spencer parties. Submission of the proposed final judgment and request that it be entered effectively presented to the trial court the desired ruling that GBNF be included in the final judgment along with the other Spencer parties. We hold that the trial court's failure to thereafter include GBNF in its judgment amounted to an adverse ruling and preserved error under Rule 52(a).

■ The bank did not challenge the jury's inclusion of GBNF in the joint award of damages in the trial court, nor do they here challenge GBNF's right to be included in the judgment. Moreover, as long as the Spencer parties agree to share the award with GBNF, we see no prejudice to the interest of the bank by this requested correction of the judgment. We hold that the trial court erred in failing to include GBNF as a

party entitled jointly to share in the award with the other Spencer parties. We sustain the Spencer parties second cross point.

By their third cross point, the Spencer parties complain that the trial court erred in failing either to instruct the jury that, or to ask the jury whether, an agency relationship existed by which a certain Lance Gilliam, who as president of GBNF negotiated with the bank on behalf of the Spencer parties, also represented Lance McFaddin in negotiating and obtaining the $2,820,000 land acquisition and development loan.

■ However, the trial court is only required to submit questions, instructions and definitions to the jury which are raised by the written pleadings and the evidence. *Dion v. Ford Motor Co.,* 804 S.W.2d 302, 310 (Tex.App.—Eastland 1991, writ denied); *Soto v. Southern Life & Health Insurance Co.,* 776 S.W.2d 752, 754 (Tex.App.—Corpus Christi 1989, no writ); Tex.R.Civ.P. 278.

■ By their live pleading at trial (Second Amended Cross–Action), the Spencer parties did not allege damages to McFaddin as a result of the bank's failure to fund the land acquisition and development loan, which was to be used for the purchase of a separate parcel of land for a future addition to Spencer Center. Instead, they alleged that the bank's failure to fund the construction loan sought by the Spencer parties set in motion a chain of events by which McFaddin was damaged through his liability on a wholly separate loan from RepublicBank Houston. Specifically, McFaddin guaranteed the indebtedness of the Spencer parties on this loan from RepublicBank by which they purchased the land on which to construct the original portion of the Spencer Center. When the Spencer parties defaulted on this loan due to the intervening difficulties caused by Texas Commerce Bank's actions, McFaddin accordingly became liable under his guarantee. Through a series of subsequent transactions with RepublicBank, McFaddin became liable to RepublicBank for $3,000,000, for which he sued Texas Commerce Bank in the present

---

8. *But see W.H. McCrory & Co. v. Contractors Equipment and Supply Co.,* 691 S.W.2d 717, 721 (Tex.App.—Austin 1985, writ ref'd n.r.e.) (motion for j.n.o.v. filed before judgment does not adequately apprise the trial court of party's dissatisfaction with the judgment thereafter rendered).

action. McFaddin also sued Texas Commerce Bank for the $202,500 fee that he was to be paid from the Spencer parties for guaranteeing their loan from RepublicBank.

Because the pleadings reveal no cause of action on which the agency relationship with Gilliam would be relevant in determining the bank's liability to McFaddin, it was not error for the trial court to deny the requested instruction or jury question regarding such an agency relationship. We overrule the Spencer parties' third cross point.

By their fifth cross point, the Spencer parties complain that the trial court erred in failing to award attorney's fees under the authority of Tex.Bus. & Com.Code Ann. § 27.01 (Vernon 1987). Section 27.01(a) & (b) generally sets up a statutory cause of action for "fraud in a transaction involving real estate or stock," when a false representation or a false promise induces the defrauded party to enter into a contract.[9] In addition, section 27.01(e) allows for the defrauded party to recover reasonable and necessary attorney's fees. The Spencer parties argue that the present loans were transactions *involving* real estate for the purpose of collecting attorney's fees under section 27.01(e).

However, Texas courts have not interpreted section 27.01 that broadly. In *Nolan v. Bettis*, 577 S.W.2d 551, 556 (Tex.Civ.App.—Austin 1979, writ ref'd n.r.e.), the court stated that "[a]n examination of § 27.01 shows that it is concerned with misrepresentation of material fact made to induce another to enter into a contract for the sale of land or stock." Thus, section 27.01 is only applicable to fraudulent misrepresentations made in real estate and stock transactions and is inapplicable when there is no contract or sale of land or stock between the parties. *Greenway Bank & Trust v. Smith*, 679 S.W.2d 592, 596 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.); *Nolan*, 577 S.W.2d at 556; *see also Stanfield v. O'Boyle*, 462 S.W.2d 270, 271 (Tex.1971); *Baskin v. Mortgage and Trust, Inc.*, 837 S.W.2d 743, 748–49 (Tex.

App.—Houston [14th Dist.] 1992, writ denied); *Fillion v. Troy*, 656 S.W.2d 912, 915 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.). Specifically, section 27.01 does not apply to a party who merely loaned money for the purchase of real estate. *Greenway Bank & Trust*, 679 S.W.2d at 596.

We agree that section 27.01 applies only when the transaction in question includes the actual conveyance of real estate between the parties. The present construction and land acquisition and development loans, however, involved real estate only indirectly and do not fall within the scope of section 27.01. We overrule the Spencer parties' fifth cross point.

Finally, Lebco by its first cross point and the Spencer parties by their fourth cross point complain that the trial court erred in failing to award prejudgment interest at the rate of 10% compounded daily from the date of the fraud. In its final judgment, the trial court completely denied prejudgment interest to both Lebco and the Spencer parties with regard to their recoveries against the bank.

In *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex.1985), the Texas Supreme Court first allowed for a prevailing plaintiff in a personal injury or wrongful death case to recover prejudgment interest compounded daily on damages that have accrued by the time of judgment. Specifically, *Cavnar* prejudgment interest applies to cases involving the intentional tort of fraud. *Voskamp v. Arnoldy*, 749 S.W.2d 113, 124 (Tex.App.—Houston [1st Dist.] 1987, writ denied).

The Texas Supreme Court in *Cavnar* further provided that such prejudgment interest would begin to accrue from a date six months after the occurrence of the incident giving rise to the cause of action and would accrue at the prevailing rate that exists on the date judgment is rendered, according to the provisions of Tex.Rev.Civ.Stat. art. 5069–1.05 § 2. *Id.* at 554–55. Thus, the

9. The predecessor to section 27.01, Tex.Rev.Civ. Stat.Ann. art. 4004 (repealed), provided a cause of action for "actionable fraud in this State with regard to transactions in real estate or in stock." The codification of the article 4004 cause of action in the Texas Business and Commerce Code brought a substitution of "transactions *involving* real estate" for "transactions *in* real estate."

date that a personal injury occurred, rather than the date that expenses were actually incurred as a result of that injury, commences the six-month period after which prejudgment interest begins to run. *Morgan v. Ceiling Fan Warehouse, Inc. # 3*, 725 S.W.2d 715 (Tex.1987).[10] In the present case, the incident giving rise to the causes of action for fraud and negligent misrepresentation was the July 30, 1985, fraudulent promise of the bank to loan money to the Spencer parties.

The bank initially raises two complaints concerning preservation of the parties' claims for prejudgment interest. First, the bank argues that Lebco failed to plead specifically for *prejudgment* interest and is therefore not entitled to it.

As a general rule, plaintiffs are required to plead for prejudgment interest sought at common law as an element of damages, whereas statutory or contractual interest may be predicated on a prayer for general relief. *Benavidez v. Isles Construction Co.*, 726 S.W.2d 23, 25 (Tex.1987); *Ingleside Properties, Inc. v. Redfish Bay Terminal*, 791 S.W.2d 217, 221 (Tex.App.—Corpus Christi 1990, no writ). Thus, in *Benavidez* the plaintiffs were required to plead for *Cavnar* prejudgment interest.[11]

■ However, in order to fulfill the pleading requirement, a simple prayer for interest generally provides fair notice of the claim for prejudgment interest. *Black Lake Pipe Line Co. v. Union Construction Co.*, 538 S.W.2d 80, 96 (Tex.1976); *Coker v. Burghardt*, 833 S.W.2d 306, 311 (Tex.App.—Dallas 1992, writ denied); *Benjamin Franklin Savings Association v. Kotrla*, 751 S.W.2d 218, 224 (Tex.App.—Houston [14th Dist.]

1988, no writ); *Brown v. Starrett*, 684 S.W.2d 145, 147 (Tex.App.—Corpus Christi 1984, no writ); *but see Federal Pacific Electric Co. v. Woodend*, 735 S.W.2d 887, 896 (Tex.App.—Fort Worth 1987, no writ) (treating a simple prayer for interest as a prayer for post-judgment interest).

■ In the present case, the Spencer parties specifically pleaded for prejudgment interest. Lebco, however, alleged merely that, "LEBCO's actual damages are at least $1,022,065.00, plus interest, attorney's fees and court costs as allowed by law." This lumping together of interest with actual damages suggests that the pleader intended prejudgment interest, which may be recovered as a part of those damages, rather than post-judgment interest, which implies an uncertain amount that accrues on a continuing basis after rendition of the judgment. Thus, it is clear from the context of Lebco's pleading that the request for "interest" is for prejudgment interest.

Second, the bank complains that neither Lebco nor the Spencer parties preserved their requests for prejudgment interest by motion for new trial or other post-judgment complaint under Tex.R.App.P. 52(a). However, as we stated earlier in our discussion of the Spencer parties' second cross point, a post-verdict motion for judgment is generally sufficient to preserve error. *Emerson*, 793 S.W.2d at 948; *see also Kotrla*, 751 S.W.2d at 224.

In the present case, Lebco by its Motion for Entry of Judgment, and the Spencer parties by their Reply of Spencer Plaintiffs to Texas Commerce Bank–Reagan's Interest

---

10. Rather than looking to the dates on which the resulting damages or expenses are incurred, *Cavnar* adopted the present "date of injury" test with a full understanding of the difficulties inherent in finding an exact date on which to begin the accrual of prejudgment interest:

> We recognize that damages are typically incurred intermittently throughout the prejudgment period. This fact complicates the award of prejudgment interest because a plaintiff is not entitled to recover prejudgment interest on damages until those damages have actually been sustained. Until that time, the plaintiff has not lost the use of the money he ultimately received from the defendant.

> Yet a system which would force litigants to determine precisely when each element of a plaintiff's damage award was incurred would impose an onerous burden on both the trial bench and bar. We therefore adopt a method of calculation that, in our opinion, fairly compensates the plaintiff and avoids the difficulty of accruing prejudgment interest.
>
> *Id.* at 554–55.

11. Since article 5069–1.05 was amended in 1987 to make prejudgment interest in personal injury cases statutory under section 6(a), a prayer for general relief is now sufficient. *See Archibald v. Act III Arabians*, 768 S.W.2d 827, 829 (Tex.App.—Houston [14th Dist.] 1989, writ denied).

Argument, asked that judgment be entered for prejudgment interest against the bank. We hold that these requests adequately presented the desired ruling for prejudgment interest to the trial court and were sufficient to preserve error under Rule 52(a).

 The bank further argues that, because in the present case past damages and future losses were lumped together, prejudgment interest should not be allowed. *Cavnar* indicated that prejudgment interest may not be awarded on future damages and punitive damages. *Id.* at 555. Moreover, where damages are awarded in one unsegregated lump sum for both past and future losses, no prejudgment interest may be awarded. *Id.* at 556.[12] However, contrary to the bank's contentions and as we stated with regard to Lebco's second cross point, the trial court in the present case limited the jury's consideration of damages to only those direct losses already incurred, and allowed evidence of subsequent losses only for purposes of determining exemplary damages. Therefore, the actual damages awarded for fraud represent only damages which have already accrued and for which prejudgment interest is proper. We sustain Lebco's first point of error and the Spencer parties' fourth point of error.[13]

In conclusion, we suggest that within 15 days of the date of this opinion Lebco file in this court a remittitur of $769,530 of its $2,500,000 award against the bank, in order to bring that award down to $1,730,470. If such a remittitur is timely filed, we shall REFORM and AFFIRM that portion of the judgment awarding damages to Lebco against the bank. *See* Tex.R.App.P. 85(c). Otherwise, we shall REVERSE that part of the judgment awarding $2,500,000 in damages to Lebco, and REMAND this case for new trial of Lebco's claims against the bank for fraud and negligent misrepresentation.

With regard to the remainder of the trial court's judgment, we MODIFY that portion of the judgment which awards $300,000 to the Spencer parties, to include GBNF, Inc., as a party entitled to share jointly in the award against the bank. We REVERSE the trial court's denial of prejudgment interest, RENDER judgment that Lebco and the Spencer parties are entitled to recover prejudgment interest, and we REMAND this case to the trial court in order that the amount of prejudgment interest may be computed in conformity with this opinion. *See Cavnar,* 696 S.W.2d at 556; *Rauscher Pierce Refsnes, Inc. v. Koenig,* 794 S.W.2d 514, 518 (Tex.App.—Corpus Christi 1990, writ denied). We otherwise AFFIRM the judgment of the trial court.

---

12. In 1987, the Texas Legislature amended article 5069–1.05 to specifically provide for prejudgment interest generally under the conditions in which *Cavnar* had allowed it. With regard to cases commenced after the amendment's effective date of September 2, 1987, the broad language of article 5069–1.05 6(a) mandating prejudgment interest generally in personal injury cases may now allow recovery of prejudgment interest on future damages. *See C & H Nationwide, Inc. v. Thompson,* 810 S.W.2d 259, 276 (Tex.App.—Houston [1st Dist.] 1991, writ granted); Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 § 6(a) (Vernon Supp.1993).

13. With regard to the calculation of prejudgment interest, we note that, while *Cavnar* provided for daily compounding, Tex.Rev.Civ.Stat.Ann. art. 5069–1.05 § 6(g) (Vernon Supp.1993) presently provides for prejudgment interest to be computed as simple interest, i.e., without compounding. The amendment adding section 6 to article 5069–1.05 further provided that it would apply generally to "an action commenced on or after the effective date of this Act," while actions commenced before the effective date would be governed by prior law. Act of June 16, 1987, 70th Leg., 1st C.S., ch. 3, § 3. Since the present action was commenced before the 1987 amendment of article 5069–1.05, prejudgment interest should be compounded daily in accordance with *Cavnar,* rather than allowing merely simple interest in accordance with the amended section 6(g). *See O'Reilly v. Grafham,* 797 S.W.2d 399, 401 (Tex.App.—Austin 1990, no writ); *see also Winograd v. Willis,* 789 S.W.2d 307, 312 (Tex.App.—Houston [14th Dist.] 1990, writ denied).