TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00113-CV






Rollingwood Trust No. 10 and Thom Farrell, Trustee, Appellants



v.



Robert E. Schuhmann, Ernestine Schuhmann Rainey and


Ellen Schuhmann Norwood, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT


NO. 96-11209, HONORABLE PETER M. LOWRY, JUDGE PRESIDING







 Rollingwood Trust No. 10 ("Rollingwood") and its trustee Thom Farrell appeal
from a summary judgment against them in a suit brought by Robert Schuhmann, Ernestine
Schuhmann Rainey, and Ellen Schuhmann Norwood (the "Schuhmanns"). We will reverse the
summary judgment and remand the cause to the trial court.


THE CONTROVERSY


 The Schuhmanns entered into a contract with James Ferguson ("Ferguson") giving
him an election to purchase, within seventy-five days and for $298,000, the Schuhmanns' 130-acre
tract of land in Travis County. The option contract provided that a "Farm and Ranch Earnest
Money Contract," executed by the parties, would become effective if and when Ferguson notified
the Schuhmanns that he elected to purchase the land.

 Before expiration of the seventy-five days fixed in the option contract, the
Schuhmanns and Ferguson agreed to extend the term of the option contract to July 1, 1994, and
the "closing" date for consummation of any sale to August 1, 1994. Ferguson paid the
Schuhmanns $1,000 for the extension.

 Ferguson notified the Schuhmanns on July 1, 1994, that he elected to purchase the
property, stating in the notice that he had assigned his rights in the earnest-money contract to
Rollingwood. Pursuant to the earnest-money contract, Ferguson deposited $5,000 in earnest
money with First American Title Company.

 Before the August 1, 1994, "closing" date a dispute arose over the sufficiency of
a survey required by the earnest-money contract. The Schuhmanns delivered the survey to
Rollingwood on July 27, 1994. Rollingwood objected to the survey based upon items omitted
from the survey that Rollingwood believed the contract required. The Schuhmanns obtained a
revised survey and delivered it to Rollingwood on the "closing" date. Rollingwood again objected
and the "closing" date passed without consummation of the sale and purchase.

 The Schuhmanns demanded that the title company pay them the $5,000 earnest-
money deposit. Rollingwood refused to consent to the payment, insisting that Rollingwood
retained a right to purchase the Schuhmann tract when the Schuhmanns provided a survey that
complied with what the earnest-money contract required. The Schuhmanns sued in the present
cause for declaratory relief that Rollingwood had no contractual right to purchase the tract and that
the Schuhmanns were entitled to the earnest money. The trial court sustained their motion for
summary judgment to that effect.

DISCUSSION AND HOLDINGS


 The Schuhmanns' motion for summary judgment was based on two grounds. The
first ground was that Ferguson did not effectively extend the expiration date of the option contract;
therefore, the option was not exercised in a timely manner and the earnest-money contract never
became effective. See Casa El Sol-Acapulco v. Fontenot, 919 S.W.2d 709, 717 n.9
(Tex.App.--Houston [14th Dist.] 1996, no writ). The Schuhmanns' second ground was that
Rollingwood failed to accept a survey that complied with the earnest-money contract. In its sole
point of error, Rollingwood argues that genuine issues of material fact precluded summary
judgment on either ground.

 The district court did not specify the ground on which it based its summary
judgment order. When a trial court does not specify the ground on which it granted summary
judgment, the judgment will be affirmed on any meritorious theory, asserted in the motion and
found in the record, that proves conclusively that the nonmovant cannot prevail. Carr v. Brasher,
776 S.W.2d 567, 569 (Tex. 1989). We review the record under familiar precepts: (1) a movant
for summary judgment has the burden of showing there is no genuine issue of material fact and
it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed issue of
material fact precluding summary judgment, matters in the record that favor the nonmovant will
be taken as true; and (3) every reasonable inference from the record must be indulged in favor of
the nonmovant and any doubts resolved in its favor. Nixon v. Mr. Property Management Co., 690
S.W.2d 546, 548-49 (Tex. 1985).


Extension of the Option Expiration Date


 Neither the option contract nor the underlying earnest-money contract prohibited
assignment. In the absence of a provision to the contrary, an option to purchase real property may
be assigned by the optionee. See Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp., 823
S.W.2d 591, 596 (Tex. 1992); Central Power & Light Co. v. Purvis, 67 S.W.2d 1086, 1088 (Tex.
Civ. App.--San Antonio 1934, writ ref'd); Hallman v. Safeway Stores, Inc., 368 F.2d 400, 403 (5th
Cir. 1966). The parties agree that Ferguson assigned his contract rights to Rollingwood before he
executed the agreement extending the option expiration date to July 1, 1994. The parties disagree
regarding whether Ferguson had authority to enter into the agreement.

 The Schuhmanns argue that Ferguson's attempt to extend the option expiration date
was a nullity because he had previously assigned to Rollingwood his rights under the option
contract and the earnest-money contract. Therefore, the Schuhmanns contend, the original option
expiration date of May 16 remained in effect. And because Rollingwood, Ferguson's assignee,
failed to exercise the option by May 16, the Schuhmanns argue the option expired and the
underlying earnest-money contract never became binding.

 "[A]n option contract gives the optionee the right to elect to purchase the property
at stated terms within a specified period of time, but with no obligation to do so." Lefevere v. Sears,
629 S.W.2d 768, 770 (Tex. Civ. App.--El Paso 1981, no writ). Ferguson assigned the option
contract to Rollingwood on April 8, 1994. When Ferguson extended the term of the option
contract on May 16, 1994, he was not acting on his own behalf because his rights in the option
contract had been extinguished as a matter of law by the assignment. See Hallman, 368 F.2d at
403.

 Did Ferguson act for Rollingwood, his assignee, in executing the extension
agreement? When Ferguson was asked in a deposition if he intended to act as an "agent" for
Rollingwood when he executed the extension, he simply responded, "No." The Schuhmanns
argue that the intent to act as an agent is an essential element of the relationship between principal
and agent. See Stanford v. Dairy Queen Prods. of Tex., 623 S.W.2d 797, 801 (Tex. App.--Austin
1981, writ ref'd n.r.e.).

 The question of agency is one of ultimate fact derived from underlying facts and
may be found from either direct or circumstantial evidence. Norton v. Martin, 703 S.W.2d 267,
272 (Tex. App.--San Antonio 1985, writ ref'd n.r.e.). When the underlying facts are established,
whether the relationship of principal and agent exists is a question of law for the court. Id.

 Ferguson's "No" response to the lawyer's question, concerning the nature of his
relationship to Rollingwood, does not in isolation establish conclusively that Ferguson was not an
agent. We must consider all the surrounding circumstances shown in the summary judgment
record. In opposing the Schuhmanns' motion for summary judgment, Rollingwood's trustee
(Farrell) swore he arranged for Ferguson to "perfect" the option transaction for Rollingwood. 
Ferguson corroborated this statement in answering as follows questions posed to him on deposition
by the Schuhmanns' lawyer:


Q: Were you acting for the benefit of Thom Farrell or Rollingwood Trust Number 10
when you signed this extension?


A: They had asked for more time, yes.


Q: Mr. Ferguson, when you signed this extension agreement, did Thom Farrell or
Rollingwood Trust Number 10 have control over you in your execution of this
agreement or the right to control your execution of this agreement?


A: I don't know what you mean by that. I mean, the man doesn't control me or anything
anyway. I mean, he asked for time and I got an extension on it.



(emphasis added).

 An agency relationship does not depend upon express appointment or assent by the
principal; the relationship may be implied from the conduct of the parties under the circumstances. 
See Grosco v. Sander, 824 S.W.2d 555, 556 (Tex. 1992). In assessing the evidence, one need not
search for any particular form of appointment. "The authority to do an act can be created by
written or spoken words or conduct of the principal which reasonably interpreted, causes the agent
to believe that the principal desires him so to act on the principal's account." 2A C.J.S. Agency
§ 42 (1972).

 It is undisputed that Rollingwood asked Ferguson to act for Rollingwood in
obtaining the extension. The appointment was thus express and for a special purpose. It is
undisputed that Ferguson performed the act requested of him and, under the circumstances shown,
he could only have acted for Rollingwood. He could not have acted for himself in obtaining the
extension because he had parted with his interest in the option contract in consideration of
Rollingwood paying him $50,000. The question of a principal's control of his agent must be
considered in these circumstances. Had Ferguson failed to perform the requested act, it is evident
that Rollingwood could have discharged him as its agent. Indeed, it appears that Rollingwood
would have been entitled in equity to compel him either to obtain the extension or refund the
$50,000. We believe this is sufficient in the circumstances shown to satisfy the control necessary
for an agency relationship. See 2A C.J.S. Agency § 6 (1972). We hold accordingly.

 Moreover, in determining whether an option right can be enforced, a fundamental
question to be resolved is whether the option contract is supported by sufficient consideration. See
Pace Corp. v. Jackson, 284 S.W.2d 340, 344 (Tex. 1955). The Schuhmanns accepted $1,000
from Ferguson in consideration of the May 16 extension agreement and cannot now contend
Ferguson failed to extend the expiration date because he was acting without authority. See Enochs
v. Brown, 872 S.W.2d 312, 317 (Tex.App.--Austin 1994, no writ) (applying doctrine of quasi-estoppel to preclude a party from maintaining position inconsistent with one in which they
accepted a benefit).

 We conclude that a summary judgment, based on an alleged failure to exercise the
option in a timely manner, was erroneous.


Performance Under the Earnest Money Contract


 The Schuhmanns' second ground for summary judgment attacked Rollingwood's
failure to comply with the earnest-money contract based on a claim that the survey was
insufficient. The earnest-money contract provided that Rollingwood's objections to the survey
would require the Schuhmanns to cure the objections within twenty days after receiving them and
"the Closing Date shall be extended as necessary." The Schuhmanns contend that Rollingwood's
objections to the original and revised survey were frivolous and failed to extend the August 1
closing date, resulting in a default by Rollingwood under the terms of the earnest-money contract. 
Rollingwood rejoins that whether the Schuhmanns ever furnished a survey that complied with the
requirements of Article 6(c)(2) of the earnest-money contract is a question of fact to be determined
after a trial.

 Article 6(c)(2) of the contract provides:


The survey shall be made by a Registered Professional Land Surveyor acceptable
to the title company and any lender. The plat shall: (a) identify the Property by
metes and bounds or platted lot description; (b) show that the survey was made and
staked on the ground with corners permanently marked; (c) set forth the dimensions
and total area of the property; (d) show the location of all improvements,
highways, streets, roads, railroads, rivers, creeks or other waterways, fences,
easements and rights of way on the Property with all easements and rights of way
referenced to their recording information; (e) show any discrepancies or conflicts
in boundaries, any visible encroachments, and any portion of the Property lying
within the 100 year floodplain as shown on the current Federal Emergency
Management Agency map; and (f) contain the surveyor's certificate that the survey
as shown by the plat is true and correct.



 After receiving the original survey, Rollingwood objected that the plat did not
show: (1) that the survey was made and staked on the ground with corners permanently marked;
(2) the location of all roads, rivers, creeks, other waterways, and fences; and (3) whether any
portion of the property lay within the 100-year flood plain as shown on the current Federal
Emergency Management Agency ("FEMA") map. After receiving the revised survey,
Rollingwood objected to what it characterized as unacceptable "approximations" of the location
of the 100-year flood plain, creeks, other waterways, and fences. Rollingwood has since conceded
that the revised survey's depiction of the 100-year flood plain was adequate. We must consider
whether questions of material fact remain concerning the extension of the closing date by reason
of Rollingwood's other objections to the revised survey.

 Several affidavits attached to Rollingwood's response to the Schuhmanns' motion
for summary judgment addressed the insufficiency of the revised survey in its depiction of creeks,
other waterways, and fences. In his affidavit, Farrell described several areas in which the revised
survey failed to meet the requirements of the earnest-money contract. The omissions included:
a failure to show various fences, a failure to depict and locate a pool situated at the head waters
of a creek, and a failure to include an additional pond located toward Victorine Lane (a roadway). 
The affidavits of both Ferguson and Roy Smith, a registered professional land surveyor who was
hired by the Schuhmanns to prepare both the original and revised survey, echo Farrell's
description of the revised survey. Of particular significance is Smith's statement that, "There may
be other ponds on the Schuhmann Property but they are not located on the Revised Survey. As
I was not instructed to locate ponds, the reason the one pond is located on the Revised Survey, was
to show the end of the creek."

 In their motion for summary judgment and their reply to Rollingwood's response,
the Schuhmanns offered no summary judgment support of why Rollingwood's objections to the
revised survey were invalid or frivolous. The Schuhmanns' summary judgment "evidence"
concerning the survey dealt exclusively with Rollingwood's FEMA-based objections. The
Schuhmanns' allegation that Rollingwood's "literal reading" of the survey requirements would
result in absurdity is not enough to sustain summary judgment. The summary judgment record
does not, therefore, establish as a matter of law that Rollingwood defaulted under the contract for
sale by failing to close on the designated closing date. We hold accordingly.

 Having reached a decision based on the first subsection of Rollingwood's sole point
of error, we need not consider the second subsection. We therefore reverse the summary
judgment and remand the cause to the trial court.



 

 John Powers, Justice

Before Chief Justice Aboussie, Justices Powers and Kidd

Reversed and Remanded

Filed: December 17, 1998

Publish



 twenty days after receiving them and
"the Closing Date shall be extended as necessary." The Schuhmanns contend that Rollingwood's
objections to the original and revised survey were frivolous and failed to extend the August 1
closing date, resulting in a default by Rollingwood under the terms of the earnest-money contract. 
Rollingwood rejoins that whether the Schuhmanns ever furnished a survey that complied with the
requirements of Article 6(c)(2) of the earnest-money contract is a question of fact to be determined
after a trial.

 Article 6(c)(2) of the contract provides:


The survey shall be made by a Registered Professional Land Surveyor acceptable
to the title company and any lender. The plat shall: (a) identify the Property by
metes and bounds or platted lot description; (b) show that the survey was made and
staked on the ground with corners permanently marked; (c) set forth the dimensions
and total area of the property; (d) show the location of all improvements,
highways, streets, roads, railroads, rivers, creeks or other waterways, fences,
easements and rights of way on the Property with all easements and rights of way
referenced to their recording information; (e) show any discrepancies or conflicts
in boundaries, any visible encroachments, and any portion of the Property lying
within the 100 year floodplain as shown on the current Federal Emergency
Management Agency map; and (f) contain the surveyor's certificate that the survey
as shown by the plat is true and correct.



 After receiving the original survey, Rollingwood objected that