NUMBER 13-02-268-CV
COURT OF APPEALS
THIRTEENTH DISTRICT OF TEXAS
CORPUS CHRISTI – EDINBURG

 
CITY OF HARLINGEN,                                                                 Appellant,
v.
OBRA HOMES, INC., CLAUDE THACKER
AND CATHERINE THACKER,                                                     Appellees.



On appeal from the 138th District Court
of Cameron County, Texas.




M E M O R A N D U M O P I N I O N

     Before Chief Justice Valdez and Justices Rodriguez and Garza

                             Opinion by Chief Justice Valdez
   
          Obra Homes, Inc. (“Obra”) sued the City of Harlingen (“the City”) contending the
City’s failure to grant its zoning request was a “taking” under the Texas Constitution and
was also a violation of due process and equal protection rights. After a trial, the jury found
the City acted unreasonably in failing to approve the zoning request but awarded Obra only
$125.00 in lost profits. The trial court increased the damages to $16,000.00.
          Now on appeal, the City contends: (1) Obra’s claims were not ripe; (2) Obra’s
claims were rendered moot by subsequent re-zoning of the property; (3) Obra lacked
standing to sue for a taking of the property; (4) no taking occurred; (5) loss of profits are
not the proper measure of damages for a takings claim; (6) the trial court erred in
increasing the award; and (7) Obra presented no evidence that its due process rights were
violated. Obra cross-appeals contending the evidence established damages in excess of
$16,000 and the trial court abused its discretion in failing to award greater damages. We
reverse the judgment of the trial court and render judgment in favor of the City.
I. FACTUAL AND PROCEDURAL BACKGROUND
          Obra is in the business of developing land and selling homes. In June 1998, Obra
entered into an earnest-money contract to purchase an undeveloped tract of land from
Catherine Thacker. Under the contract, Obra would pay Thacker $606,832 for the property
and closing would occur on December 10, 1998. Possession was to be delivered at
closing. 
          The tract of land consists of about 44.6 acres located in Harlingen. Obra planned
to subdivide the property and build between 280 and 287 single-family homes on the
property. Each home would be built on a lot measuring about 5,000 square feet. 
          The contract required the enactment of certain zoning ordinances which would
permit the erection of single family homes on the property. An addendum to the contract
gave Obra the right to conduct studies, including inspection of zoning laws, within 160 days
of the contract’s effective date. If Obra discovered the property was not suitable for its
intended use within the 160-day period, it could notify Thacker and cancel the contract. 
          When Obra entered into the earnest money contract, the tract of land was zoned
N, which refers to areas not yet zoned or newly annexed or subdivided. In June 1998,
Obra applied for a re-zoning of the property to R-2, which refers to an area for the
development of primarily duplex family units. Under this designation, Obra contended it
would have been able to build single family homes on 5,000-square-foot lots.
          The City staff and the Planning and Zoning Commission both recommended
approval of the re-zoning request. The City staff, however, noted the availability of R-1
zoning, which refers to an area designated for the development of single family homes on
lots no smaller than 6,000 square feet. 
          On August 5, 1998, when the request was presented to the City Commission,
several citizens voiced concerns, which included complaints that the lot-size was too small
and the plan would negatively impact the value of the lots in surrounding areas and
overcrowd local schools. The City Commission did not approve or deny the request, and
the request failed by default.
          On the recommendation of the City staff, Obra re-submitted its proposed subdivision
under a request to have the property re-zoned to PD. This type of zoning refers to a
planned development, allows flexibility in planning, and, according to Obra, could have
allowed the building of single-family residences on 5,000-square-foot lots.
          Again, the City staff and the Planning and Zoning Commission recommended
approval of the re-zoning request. When the request went before the City Commission,
the Mayor proposed postponing the vote so a meeting could be held between Obra,
representatives of the homeowners, and City representatives. Obra agreed. At the
meeting, however, Obra and the homeowner representatives were not able to reach an
agreement that both addressed the representatives’ concerns and was satisfactory to
Obra. 
          On October 7, 1998, Obra’s request for PD zoning was again considered by the City
Commission. Several citizens spoke in opposition to re-zoning, voicing many of the same
concerns previously expressed and stating R-1 was the best zoning option. The proposed
ordinance changing the zoning from N to PD did not receive the required support and
accordingly, failed.
          Although Thacker gave Obra an extension to close on the property for an additional
sum of money, Obra ultimately failed to consummate the sale and the contract expired. 
Thacker retained the property and the earnest money.
          Obra’s initial pleading sought injunctive relief including a permanent injunction
preventing the City from denying its request for PD zoning. Obra later amended its
pleading to seek economic damages, consequential damages, lost profits, attorney’s fees,
and costs. 
          Other than questions pertaining to the amount of damages, the only question
presented to the jury was whether the City acted “unreasonably in failing to approve or
deny [Obra]’s requests for re-zoning.” All but one juror answered yes. The final judgment
did not specify on what claims judgment was rendered and awarded only monetary
damages.



II. ANALYSIS
A. Jurisdictional Challenges to All Claims
          By its first issue, the City contends Obra’s claims were not ripe because Obra never
obtained a “final decision” on the zoning requests. Alternatively, the City argues by its
second issue that Obra’s claims became moot.
          Both ripeness and mootness are components of subject matter jurisdiction. See
Valley Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d 821, 822 (Tex. 2000) (if plaintiff lacks
standing or controversy becomes moot, trial court lacks subject matter jurisdiction and any
ruling is impermissibly advisory and void). Whether the trial court has subject matter
jurisdiction over a claim is a question of law and is reviewed de novo. City of Houston v.
Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 308 (Tex. App.–Houston [1st Dist.] 2001,
pet. denied). To determine whether subject matter jurisdiction exists, we look to the
pleadings and also may consider evidence relevant to the jurisdictional issue. Id. 
1. Ripeness
          The City contends the failure to approve or deny Obra’s re-zoning requests was not
a “final decision.” We disagree.
          A final decision regarding the application of zoning regulations to the property at
issue is required for a due process challenge to land-use decisions to be ripe. Mayhew v.
Town of Sunnyvale, 964 S.W.2d 922, 929-30 (Tex. 1998). This prerequisite requires a
“‘final and authoritative determination of the type and intensity of development legally
permitted on the subject property.’” Id. (quoting MacDonald, Sommer & Frates v. Yolo
County, 477 U.S. 340, 348 (1986)). We cannot determine whether a taking has occurred
until we can compare the uses prohibited by the regulation to any permissible uses that
may be made of the subject property. Id. 
          A “final decision” generally requires denial of a development plan and a denial of a
variance from the controlling regulations. Id. at 932. The term “variance” includes other
types of available permits or actions that could provide similar relief. Id. at 930. However,
futile variance requests or re-applications are not required to render the claim ripe. Id. at
929. Nor is the party required to seek permits for development that he does not deem
economically viable. Id. at 932. 
          Here, Obra submitted an application for re-zoning to R-2 and later to PD. The City’s
inaction on both applications effectively denied Obra’s application. In addition, Michelle
McCoy, the director of the planning and zoning commission, testified that after Obra’s
second re-zoning request failed for lack of support in the commission, she informed Obra
“that that was the end of the line.” She also told Obra it could file an application for R-1
zoning if it chose. R-1 zoning would require Obra to build single family residences on
6,000 square-foot lots. The City was not going to allow development of single family
residences on 5,000 square-foot lots but would consider a plan for development on 6,000
square-foot lots. Tommy Brownell, the land acquisition and development manager for
Obra, testified that, at the price they would pay per acre for the land, Obra would not have
profited enough from building on 6000 square-foot lots to justify the risk. 
          Although the commission did not explicitly deny the re-zoning applications, its
inaction effectively denied Obra the re-zoning it sought. Under these circumstances, we
conclude Obra received a final decision and its claims are ripe for adjudication. We
overrule the City’s first issue.
2. Mootness
          The City also contends the case and appeal became moot after the property was
later sold to Elizarde Homes, Inc. and Elizarde Homes obtained re-zoning of the property
to R-1. Again, we disagree.
          An appeal becomes moot when the appellate court’s judgment cannot affect the
rights of the parties. VE Corp. v. Ernst & Young, 860 S.W.2d 83, 84 (Tex. 1998). That is,
the cause is moot when our judgment can have no “practical legal effect upon a then-existing controversy.” Bd. of Adjustment, City of Corpus Christi v. McBride, 676 S.W.2d
705, 708 (Tex. App.–Corpus Christi 1984, no writ). 
          In McBride, the principle case relied on by the City, the appellant sought the
reinstatement of an injunction preventing the continued construction of a home. Id. at 706,
708. During the pendency of the appeal, the appellee filed a motion to dismiss the appeal
on the basis, in part, that the work had been completed. Id. at 709. The appellee
contended the portion of the appeal pertaining to the injunction was rendered moot. Id. 
Focusing on the relief requested, we agreed the complaint was moot because
reinstatement of the injunction would have no practical effect. Id.
          Here, Obra’s complaint was not rendered moot by the subsequent sale and re-zoning of the property. Unlike the appellant in McBride, Obra does not seek reinstatement
of an injunction or similar relief. Instead, Obra seeks monetary damages suffered by virtue
of the City’s alleged violation of Obra’s constitutional rights. The fact that Thacker later
sold the property to another party and the City later re-zoned the property does not
eliminate or otherwise render moot Obra’s claims that the City’s actions deprived it of lost
profits or other monetary damages. Our judgment would have a practical, legal effect on
the controversy between the parties. We conclude Obra’s claims are not moot, and we
overrule the City’s second issue.
B. Takings Claim
          Having determined that Obra’s claims are ripe and not moot, such that the trial court
properly exercised subject matter jurisdiction over the case, we turn to the City’s remaining
issues on appeal. In its third issue, the City contends Obra did not have standing to sue
under the takings clause of the Texas Constitution. We agree. 
          The test for standing requires that a real controversy exist between the parties that
will be actually determined by the judicial relief sought. Tex. Ass’n of Bus. v. Tex. Air
Control Bd., 852 S.W.2d 440, 446 (Tex. 1993). Standing is a constitutional prerequisite
to maintaining a suit and also a component of subject matter jurisdiction. Williams v. Lara,
52 S.W.3d 171, 178 (Tex. 2001); Tex. Ass’n of Bus., 852 S.W.2d at 444-45. 
1. Standing
          Obra sued the City under the takings clause of the Texas Constitution. See Tex.
Const. art. I, § 17. The clause states in relevant part “[n]o person’s property shall be
taken, damaged or destroyed for or applied to public use without adequate compensation.” 
To establish standing under this clause, a party must show the action complained of
resulted in a “taking” of vested property rights. City of Houston, 73 S.W.3d at 309. The
word “property” as used in the takings clause refers to “every species of property.” 
Renault, Inc. v. City of Houston, 415 S.W.2d 948, 952 (Tex. Civ. App.–Waco 1967), rev’d
on other grounds, 431 S.W.2d 322 (Tex. 1968).
2. The Property
          Initially, the parties dispute what “property” was the subject of Obra’s takings claim.
Obra contends on appeal that the earnest money contract and the money it expended in
engineering and platting are the “property” at issue here. The City contends the tract of
land is actually the property that was the subject of the trial because Obra’s petition
complained of the loss of use and enjoyment of this land. A review of Obra’s application
for injunctive relief supports the City’s position. 
          In the description of the facts in Obra’s third amended application for injunctive
relief, Obra mentioned the earnest money contract but never referred to the contract as the
property at issue in its claim. Rather, every use of the expression “the property” in the
background section referred to the tract of land and nothing else: 
2.01 . . . Plaintiff . . . entered into a real estate earnest money contract to
purchase the following property: [description of the tract of land].

2.02 . . . The property described above was purchased for such a purpose
and said property is within the city limits of the City of Harlingen.

2.03 The above described property was at all times zoned NZ or not zoned
by the city. It had been contemplated by the city to be property that would
be zoned for a variety of purposes. However, at all times relevant to the
issues in this case the City of Harlingen had not classified the property.

2.04 . . . the Plaintiff began the process to have the property zoned R2. . . .

(emphasis added.)
          In the section in which Obra set forth its takings claim, Obra continued to use the
expression “the property” as if referring to the tract of land. Nowhere in this section did
Obra even suggest that it was referring to the contract or money invested in engineering
and platting when it used the term “the property.” Obra also referred to loss of its “rights
to use and enjoy its property” and “permanent loss of use and value of [its] property.” 
These expressions refer to land and not to an earnest money contract. 
          Additionally, the theory presented by Obra during arguments and advanced by its
evidence at trial was that the City’s failure to re-zone the property (i.e., the physical tract
of land) prevented Obra from developing the land as it had planned. The evidence and
arguments were not that the City’s conduct prevented Obra from exercising its rights under
the earnest money contract. As the City aptly noted during oral arguments, “You only re-zone land; you don’t re-zone contracts.” Accordingly, we conclude Obra’s takings claim
pertained to the land.
3. Property Rights in the Tract of Land 
          The City contends Obra did not have an interest in the land sufficient to give it
standing to sue under the takings clause. In addressing the City’s contention, we look at
what rights to the land Obra obtained in the earnest money contract.
          An option contract for the sale of land gives the optionee a right to choose to
purchase the property within the time and the terms specified but does not obligate him to
do so. Chambers County v. TSP Dev., Ltd., 63 S.W.3d 835, 838 (Tex. App.–Houston [14th
Dist.] 2001, pet. denied); Rollingwood Trust No. 10 v. Schuhmann, 984 S.W.2d 312, 315
(Tex. App.–Austin 1998, no pet.); Lefevere v. Sears, 629 S.W.2d 768, 770 (Tex. Civ.
App.–El Paso 1981, no writ). Title does not pass to the buyer at the time an option
contract is formed, and time is of the essence. Chambers County, 63 S.W.3d at 838;
Lefevere, 629 S.W.2d at 770. 
          A contract for the sale of land, on the other hand, is an agreement that binds the
buyer to buy and the seller to sell under the terms of the contract. Chambers County, 63
S.W.3d at 838; Greve v. Cox, 683 S.W.2d 535, 536 (Tex. App.–Dallas 1984, no writ);
Lefevere, 629 S.W.2d at 770. The term “sale” refers to the transfer of the seller’s equitable
title in consideration of the buyer’s promise to pay the purchase price. Frady v. May, 23
S.W.3d 558, 565 (Tex. App.–Fort Worth 2000, pet. denied). That is, a contract for sale
passes equitable title to the buyer. Chambers County, 63 S.W.3d at 838; Lefevere, 629
S.W.2d at 770. 
          The primary test to determine whether an earnest money contract pertaining to the
sale of real estate is an option contract or a contract of sale is whether the seller’s only
contractual remedy in the event of the buyer’s default is liquidated damages. Chambers
County, 63 S.W.3d at 838; Seelbach v. Clubb, 7 S.W.3d 749, 756 (Tex. App.–Texarkana
1999, pet. denied); Lefevere, 629 S.W.2d at 770-71. If the only contractual remedy for the
seller is retention of the earnest money, the agreement is an option contract. Chambers
County, 63 S.W.3d at 838; Seelbach, 7 S.W.3d at 756. Absent such a provision, the
agreement typically is a contract of sale. Cadle Co. v. Harvey, 46 S.W.3d 282, 286 (Tex.
App.–Fort Worth 2001, pet. denied). 
          Courts also look at other factors to determine whether the contract is an option
contract or one of sale. One such factor is whether the language of the contract is
prospective. See Chambers County, 63 S.W.3d at 839 (prospective language supported
conclusion that contract was option contract); Seelbach, 7 S.W.3d at 756 (language in
contract stating seller “agrees to sell” and buyer “agrees to buy” is not language of contract
of sale but agreement to sell in future). Another factor is whether time is of the essence. 
See Chambers County, 63 S.W.3d at 840 (time-is-of-the-essence clause supported
conclusion that contract was option contract); Lefevere, 629 S.W.2d at 770 (in option
contract, time is of essence). Yet another factor is whether the language of the contract
itself conveys to the party seeking standing any rights to possess or enjoy the property. 
Seelbach, 7 S.W.3d at 756; see Cadle Co., 46 S.W.3d at 286 (“Typically, contracts for sale
provide that upon making a down payment, the buyer is entitled to immediate possession
of the property, with the remaining purchase price paid in installments over a period of
time.”). 
          The opinions of our sister courts in Seelbach and Chambers County are particularly
instructive here. In Seelbach, Seelbach entered into an earnest money contract to
purchase some land from the McCoys. Seelbach, 7 S.W.3d at 753. The closing was
conditioned on the McCoys establishing for Seelbach that any obstructions to his right to
ingress or egress be resolved in his favor. Id. Seelbach contended locked gates interfered
with his ability to close on the property and asked the county and two individuals to take
down the gates. Id. When the county and the individuals failed to do so, Seelbach sued. 
Id. at 754. Although the court granted him a permanent injunction, it denied his request
for damages and other recovery. Id. at 752.
          On appeal, among the issues the court considered was whether Seelbach had
standing to sue for damages under the earnest money contract.


 Id. at 755. The court
focused its analysis on determining whether the contract was a contract of sale or a
contract to sell the property at some point in the future. Id. at 755-56. 
          In concluding the earnest money contract was not a contract of sale but rather an
option contract, the court focused on several characteristics of the contract. First, the
language of the contract was prospective, indicating the actual sale and purchase of the
land would occur in the future. Id. Second, the court noted the contract provided that the
seller’s only remedy in the event of buyer’s default was the retention of earnest money. 
Id. Because of these provisions, the execution of the earnest money contract was an
option contract and not a contract of sale. Id. (citing Scott v. Vandor, 671 S.W.2d 79, 84
(Tex. App.–Houston [1st Dist.] 1984, writ ref’d n.r.e.) and Broady v. Mitchell, 572 S.W.2d
36, 40 (Tex. Civ. App.–Houston [1st Dist.] 1978, writ ref’d n.r.e.)). Third, the contract did
not give Seelbach the right to enter and otherwise possess the land until the closing. Id. 
Under these circumstances, Seelbach did not have any right to possession of the land and
could not recover for actual damages for obstructed ingress and egress to the land. Id.
          In Chambers County, the issue was whether a contract pertaining to the sale of land
was an option contract or a contract for sale, the latter of which would confer standing on
a party to raise a takings claim under the Private Real Property Rights Preservation Act. 
Chambers County, 63 S.W.3d at 837 (citing Tex. Gov’t Code Ann. §§ 2007.001-.045
(Vernon 2000)). The act allows a person with legal or equitable title to land to sue for a
taking. Id. at 837-38 (citing Tex. Gov’t Code Ann. § 2007.002(2) (Vernon 2000)). 
          In concluding the contract was an option contract and not one for sale, the court
relied on several characteristics of the contract. First, the only remedy to the seller on
default of the buyer was retention of the deposit. Id. at 839. Second, the language of the
contract was prospective. Id. That is, the contract said, “Seller agrees to sell and Buyer
agrees to buy . . .” instead of “Seller(s) ‘sells and agrees to convey . . . .’” Id. Third, the
contract left open various terms of sale for future determination. Id. at 839-40. Fourth, the
contract stated throughout that time was of the essence and contained clauses stating that
if the land was not purchased before a specific date, an additional deposit would be
required. Id. at 839-40. The court added that “[t]ime being of the essence is a hallmark
of the option contract.” Id. at 840 (citing Smith v. Hues, 540 S.W.2d 485, 488 (Tex. Civ.
App.–Houston [14th Dist.] 1976, writ ref’d n.r.e.)). After finding the contract was an option
contract, the court concluded the buyer did not have equitable title and, thus, had no
standing to bring his suit. Id. 
          Although neither case dealt specifically with a takings claim brought under the Texas
and United States Constitutions, we do find meaningful guidance in these cases. These
courts analyzed what rights to land an earnest money contract will confer on the “buyer,” 
which is the precise issue now before us. 
          In this case, nearly all of the factors considered by Seelbach and Chambers County
weigh in favor of concluding the earnest money contract was an option contract and did not
give Obra standing to sue for a taking of the land. First and foremost, the contract limited
the seller’s recovery to the earnest money. The contract contained a clause stating that,
should Obra default, Thacker could “(1) enforce specific performance, or (2) seek such
other relief as may be provided by law, or both, or (3) terminate this contract and receive
the Earnest Money as liquidated damages, thereby releasing Buyer from this contract.” 
However, an added clause to the contract stated the earnest money was nonrefundable
and Obra would forfeit the earnest money upon its default or termination of the contract for
any reason. This clause effectively limited Thacker’s choice of remedy only to the earnest
money and rendered the contract an option contract. See Seelbach, 7 S.W.3d at 755.
          Second, the contract between the parties contained the language seller “agrees to
sell and convey” and buyer “agrees to buy” the property. This language is prospective,
suggesting the sale would take place in the future and supporting a conclusion that the
earnest money contract was an option contract. See Chambers County, 63 S.W.3d at 839.
          Third, the contract did not give Obra the right to enter and take possession of the
property until the closing of the sale. The only right of access Obra was given by the
contract was the limited right to enter the property in order to conduct its feasibility studies
pursuant to the addendum to the contract. See Seelbach, 7 S.W.3d at 755-60.
          Fourth, the contract stated time was of the essence and that “strict compliance with
the times for performance is required.” In fact, Obra paid for an extension of the earnest
money contract. See Chambers County, 63 S.W.3d at 840. 
          Notably, Obra never consummated the purchase of the property and the earnest
money contract expired. Thacker retained both the earnest money and the property. 
          Under these circumstances, we conclude the earnest money contract was an option
contract. Obra never obtained equitable title under the contract or the right to possess or
develop the land. The contract gave Obra only the right to choose to purchase the land
in the future, a right Obra chose not to exercise. Thus, Obra had no right in the land that
was “taken” by the City’s zoning decision. Accordingly, we conclude Obra had no standing
to assert a takings claim under the Texas Constitution, and we sustain the City’s third
issue.
C. Due Process Claims
          The City contends by its fifth issue that Obra presented no evidence the City
violated Obra’s state and federal substantive due process rights. Specifically, the City
contends that article one, section nineteen of the Texas Constitution cannot support the
money judgment. The City also argues Obra failed to establish a constitutionally protected
property right to support its federal claim.
1. State Claim
          Article one, section nineteen of the Texas Constitution creates no private right of
action. See City of Beaumont v. Bouillion, 896 S.W.2d 143, 147 (Tex. 1995) (holding no
implied private right of action for damages arising under the free speech and free assembly
clauses of the Texas Constitution); O’Bryant v. City of Midland, 949 S.W.2d 406, 413-14
(Tex. App.–Austin 1997) (applying City of Beaumont to due process claim brought under
Texas Constitution), rev’d in part on other grounds, 18 S.W.3d 209 (Tex. 2000); Harrison
v. Tex. Dep’t of Criminal Justice–Institutional Div., 915 S.W.2d 882, 888 (Tex.
App.–Houston [1st Dist.] 1995, no writ) (no implied private right of action for money
damages under article one, section nineteen of Texas Constitution). It only supports
claims for equitable relief. Harrison, 915 S.W.2d at 888. 
          Here, although Obra initially sought declaratory and injunctive relief, it pursued only
monetary relief once it allowed the earnest money contract to expire. The judgment
awarded only monetary relief. Thus, article one, section nineteen of the Texas Constitution
cannot support the judgment rendered here. See id.
2. Federal Claim 
          The City also contends that Obra did not prove the City’s conduct resulted in a
violation of Obra’s federal due process rights. 
          A zoning ordinance may substantively violate due process if the action has no
foundation in reason and is merely an arbitrary or irrational exercise of power having no
substantial relation to the public heath, the public morals, the public safety or the public
welfare. See Mayhew, 964 S.W.2d at 935. Obra contends that the City’s actions
constituted a deprivation of these due process rights. The City responds that Obra has
waived its federal claim on appeal by filing a motion for entry of judgment on the verdict.
          Where a party moves the court to enter a judgment and the court enters the
judgment requested, the party cannot later complain of the judgment. Casu v. Marathon
Refining Co., 896 S.W.2d 388, 391-92 (Tex. App.–Houston [1st Dist.] 1995, writ denied);
Texas Commerce Bank Reagan v. Lebco Constructors, Inc., 865 S.W.2d 68, 80 (Tex.
App.–Corpus Christi 1993, writ denied). An exception exists by which a party desiring to
initiate the appellate process may move the court to render judgment on an erroneous
verdict without being bound by its terms: to preserve its complaint about a judgment, the
party moving for judgment should state in its motion that it agrees only with the form of the
judgment and note its disagreement with the result and content of the judgment. See First
Nat’l Bank v. Fojtik, 775 S.W.2d 632, 633 (Tex. 1989) (per curium); Lebco, 865 S.W.2d at
80.
          Here, Obra styled its motion “Motion for Judgment Non-Obstante Verdicto, Motion
for Attorney’s Fees and in the alternative, Motion for New Trial.” However, in the motion,
Obra requested an entry of judgment based on the verdict reached by the jury, and asked
the court to find, in accordance with the jury verdict, that the City acted arbitrarily and
capriciously in failing to re-zone the property that was the subject of the lawsuit. Obra
explicitly noted that the case was tried under Texas state law only, specifically the Uniform
Declaratory Judgment Act. Obra did not assert any disagreement with the result of the
judgment or the reasoning incorporated therein, but rather requested a judgment
notwithstanding the verdict based on what it felt were inadequate damages: “The jury’s
failure to award the undisputed amount was against the great weight and preponderance
of the evidence. There was no evidence to sustain the jury’s award of $125. . . . The
plaintiffs move the court to enter judgment in the amount of $1,500.”
          We see that Obra failed to rely on any federal claim or federal law as a basis for the
jury’s verdict, and couched its motion for entry of judgment in terms of state law only. Obra
could have, but did not, move for entry of judgment based on its federal due process
claims. However, because it explicitly relied on its state law-based claims only and
expressed no disagreement with the result and content of the judgment beyond damages,
we conclude that it cannot now complain on appeal about the alleged violation of its federal
due process rights, as this was not made a part of the court’s basis for entering judgment. 
See Lebco, 865 S.W.2d at 80. Accordingly, we conclude that the federal due process
claim was not incorporated into the judgment and so does not support the judgment, and
we sustain the City’s fifth issue on appeal. 
          Because our disposition of these issues disposes of this case, including Obra’s
cross-claim, we do not address the parties’ remaining issues. See Tex. R. App. P. 47.1. 

III. CONCLUSION
          The City has established that Obra lacked standing to bring its takings claim and
that Obra’s due process claims do not support the judgment rendered. Accordingly, we
reverse the judgment of the trial court and render judgment in favor of the City. 
 

                                                                                                                                
                                                                                      Rogelio Valdez,
                                                                                      Chief Justice

 

 Memorandum Opinion delivered and filed
this 13th day of January, 2005.