RIO GRANDE VALLEY SUGAR
GROWERS, INC., Petitioner,

v.

Ross CAMPESI, Respondent.

No. B–8470.

Supreme Court of Texas.

Dec. 31, 1979.

Rehearing Denied Feb. 6, 1980.

Ewers, Toothaker, Ewers, Abbott, Talbot,
Hamilton & Jarvis, Neil E. Norquest, McAl-
len, for petitioner.

Atlas, Hall, Schwarz, Mills, Gurwitz &
Bland, Morris Atlas, Gary R. Gurwitz and
Charles C. Murray, McAllen, for respon-
dent.

BARROW, Justice.

The determinative question presented by
this appeal is the validity of a provision for
liquidated damages contained in a market-
ing agreement agreed to by respondent,
Ross Campesi, and petitioner, a co-operative
marketing association. The trial court con-
cluded that the provision was invalid and
sustained Campesi's motion for partial sum-
mary judgment. It entered a final judg-
ment after a jury trial of the remaining
issue in the cause. The court of civil ap-
peals affirmed. 580 S.W.2d 850. We con-
clude that the provision is valid and, there-
fore, the partial summary judgment was
erroneously granted. We reverse the judg-
ments of the lower courts and remand the
cause to the trial court.

In 1971 a group of farmers, including
Campesi, formed petitioner for the purpose
of establishing a sugarcane industry in the
Rio Grande Valley. Petitioner, hereinafter
referred to as Association, is a nonprofit
stock co-operative marketing association

formed pursuant to the Texas Co-Operative Marketing Act, Article 5737, *et seq.*,[1] whose function is to harvest, mill and process sugarcane into raw sugar and its by-products and to market same. The total cost to the Association of setting up the sugar industry was approximately $42,000,000, of which $21,000,000 was borrowed. To secure repayment of these loans, the Association entered into ten-year marketing agreements with its members requiring them to produce a specified tonnage of sugarcane or pay damages in the event the specified tonnage was not produced. The marketing agreement, hereinafter sometimes referred to as the contract, provided that the Association would pay the net proceeds due each member after deducting, among other items, a sum to cover the Association's fixed overhead costs and expenses for each year's operations.

Campesi, an experienced sugarcane grower, was involved from the outset in the scheme to set up a sugarcane industry in the Valley; and he became a member of the Association at its inception. He executed a ten-year marketing agreement whereby he agreed to raise and to deliver to the Association 26,121.9 tons of sugarcane on 625 acres. However, due to a failure of his seed cane, he produced only 252 tons during the grinding season of October 1973 through April 1974. Because of this failure, the Association in May of 1975, deducted $129,349.50 as liquidated damages from the amount due Campesi for the sugarcane he produced in the 1974–1975 grinding season.

Campesi brought this suit seeking to recover this sum which he alleged was being wrongfully withheld from him. The Association defended on the basis that this deduction was authorized by a liquidated damage provision in the marketing agreement signed by Campesi. The Association filed a counterclaim whereby it sought to recover its actual damages in the event that the trial court found it was not entitled to recover the contractual liquidated damages. Thereafter, Campesi filed a motion for partial summary judgment whereby he assert-ed that paragraph 15(a) of the marketing agreement, which authorized recovery of liquidated damages, was void and unenforceable. The Association contested Campesi's motion for summary judgment, but did not file a motion for summary judgment seeking any affirmative relief of its own. The trial court entered an order granting Campesi's motion for partial summary judgment and declared paragraph 15(a) of the marketing agreement void. The case then proceeded to trial before a jury on the Association's alternative claim for actual damages. The jury found in response to the only issue submitted to it that the Association had sustained actual damages in the amount of $87,692.80 because of Campesi's failure to plant his sugarcane in the 1973–1974 grinding season. Judgment was entered whereby Campesi recovered the difference between the sum withheld by the Association and its actual damages as found by the jury.

Paragraph 15(a) of the marketing agreement entered into by Campesi and the Association provides in part:

"Inasmuch as the remedy at law would be inadequate and inasmuch as it is now and ever will be impractical and extremely difficult to determine the actual damage resulting to Association should Grower *fail or refuse to grow and deliver sugar cane* as herein provided, Grower hereby agrees to pay Association for each ton of such sugar cane delivered, sold, consigned, withheld or marketed by or for him, or which he fails or refuses to grow or deliver, other than in accordance with the terms hereof, the sum of Five Dollars ($5.00) per ton as liquidated damages for the breach of this contract. . . ." (Emphasis Ours)

The trial court, in sustaining Campesi's motion for partial summary judgment, held this provision to be void. The court of civil appeals agreed for two reasons: (1) Article 5753 is construed to require authorization for a liquidated damage provision to be in the Association's by-laws as well as in the marketing agreement signed by the grower.

---

1. All statutory references are to Texas Revised Civil Statutes Annotated.

(2) Article 5753 does not authorize liquidated damages for a *failure to grow* as distinguished from a *failure to deliver* sugarcane to the Association.

Article 5753 provides in part:

"The association and its members may make and execute marketing contracts, requiring the members to sell, for a period of time, not over ten years, all or any specified part of their agricultural products or specified commodities exclusively to or through the association or any facilities to be created by the association. . . . *The by-laws and the marketing contract may fix, as liquidated damages, specific sums to be paid by the member or stockholder to the association upon the breach by him of any provisions of the marketing contract regarding the sale or delivery or withholding of products;* and may further provide that the member will pay all costs, premiums for bonds, expenses and fees in case any action is brought upon the contract by the association; and any such provisions shall be valid and enforceable in the courts of this State. In the event of any breach or threatened breach of such marketing contract by a member, the association shall be entitled to an injunction to prevent the further breach of the contract and to a decree of specific performance thereof. . . ." (Emphasis Ours)

The court of civil appeals held that since the by-laws of the Association do not contain a provision authorizing liquidated damages, the provision of the marketing agreement which was signed by Campesi is void and unenforceable.

■ It must be recognized at the outset that the Association had a common-law right to contract for liquidated damages unless expressly prohibited by this statute. It is recognized that an ordinary corporation is authorized to make contracts including the right to contract for liquidated damages.[2] *See* Article 2.02(A)(9), Tex.Bus.

Corp.Act Ann.; *Texas Farm Bureau Cotton Ass'n v. Williams,* 117 Tex. 218, 300 S.W. 44 (1927). Article 5742(g) grants a marketing association all "rights, powers and privileges granted by the laws of this state to ordinary corporations, except such as are inconsistent with the express provisions of this Act; . . . ." A similar general grant of authority is contained in Article 5763. Therefore, the narrow issue before us is whether that part of Article 5753 which states that "[t]he by-laws and the marketing contract may fix," liquidated damages prohibits the general right of the Association to so contract with its members in the absence of authorization in its by-laws. We hold that it does not.

The language of the phrase in question is clearly permissive in nature. It would have been very easy for the legislature to have mandatorily stated that authorization for liquidated damages must be contained in the by-laws if this was their intent. Here, the statute does not even suggest that the parties are prohibited from entering into such a contract. Furthermore, a requirement that the authorization be contained in both the by-laws and marketing agreement would result in a needless duplication in that the members would be bound by such a provision if it was in the by-laws alone.

Nearly all courts that have considered the question have upheld the validity of similar provisions in a member's contract authorizing reasonable liquidated damages for the violation of the member's agreement to deliver all of his products to the association for processing and marketing. *See* Annot., 12 A.L.R.2d 130 (1950). The primary reason for this is probably due to the nature of co-operative marketing associations. The success of such an association is dependent upon the compliance, by all of the contracting parties, with the terms and conditions of their respective contracts. It is usually necessary, as in the case before us, that enormous sums of capital be secured before

---

2. In order to enforce a liquidated damage clause, the court must find: (1) that the harm caused by the breach is incapable or difficult of estimation, and (2) that the amount of liquidated damages called for is a reasonable forecast of just compensation. *Stewart v. Basey,* 150 Tex. 666, 245 S.W.2d 484 (1952).

the necessary mills or plants can be built to process the products. A secure supply of the raw product is required to attract this capital. In order to carry out the objects and purposes of a marketing association, it is frequently necessary for the association to enter into contracts for the disposal of the products of its members and to be assured of a steady source of supply to enable it to operate efficiently and economically. The disrupting effect which a member's failure to deliver all of his product to the association would have on its successful functioning and the consequent element of damage likely would not be capable of any exact determination. Therefore, the association has a great stake in each member's adherence to his or her agreement for the term of the membership. By reason of all of these factors, most marketing agreements contain a provision for liquidated damages.

While we have found no case which considered the specific question before us as to whether such a provision in the member's contract is valid in the absence of authorization in the association's by-laws, there are Texas cases which recognized an association's right to liquidated damages by virtue of the member's contract without regard to the by-laws. *See Texas Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 253 S.W. 1101 (1923); *Lennox v. Texas Cotton Ass'n,* 16 S.W.2d 413 (Tex.Civ.App.—Texarkana 1929, writ ref'd), *on second appeal, Lennox v. Texas Cotton Co-Op. Ass'n,* 55 S.W.2d 543 (Tex.Com.App.1932, holding approved).

We conclude that the lower courts erred in holding that the contractual provision in the marketing agreement signed by Campesi which authorized liquidated damages was void because there was no similar authorization in the Association's by-laws.

The court of civil appeals affirmed the trial court's partial summary judgment for the additional reason that Article 5753 authorizes liquidated damages only for the breach of a contractual provision regarding "the sale or delivery or withholding of the products." Since we have upheld the Association's common-law right to contract with its members for reasonable liquidated damages, it is unnecessary to consider whether Campesi's breach by failing to deliver his agreed tonnage of sugarcane to the Association comes within the meaning of these terms in the statute. The marketing agreement entered into by Campesi with the Association expressly obligates him "to grow" as well as "to deliver" the contracted tonnage of sugarcane. Such a provision was essential to the members in the formation of this marketing association in order to justify the large capital expenditure. Unquestionably, there is evidence that he did not do so.

The trial court erred in granting Campesi's motion for a partial summary judgment. Since the Association did not assert its own motion for summary judgment, we do not have jurisdiction to consider its points urging a rendition of the judgment. *Cowan v. Woodrum,* 472 S.W.2d 749 (Tex.1971). Also, Campesi wishes to raise the question on the merits of whether the provision for liquidated damages is a penalty and, therefore, unenforceable. We hold here only that the partial summary judgment was improperly granted.

The judgments of the lower courts are reversed and the cause is remanded to the trial court.

GARWOOD, J., not sitting.