Art Brender v. Sanders Plumbing Inc

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-05-067-CV

ART BRENDER APPELLANT

V.

SANDERS PLUMBING, INC. D/B/A APPELLEE

SANDERS PLUMBING

------------

FROM COUNTY COURT AT LAW NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

Appellant Art Brender appeals from a judgment rendered on a jury verdict awarding $5,963.65 in damages and $6,200 in attorney’s fees to Sanders Plumbing, Inc., d/b/a Sanders Plumbing.  The jury also found for Brender on his negligence claim and awarded him $307.57.  For the reasons set forth below, we will affirm.

II.  Factual and Procedural Background

Brender, an attorney whose law office is located in an old house in Fort Worth, discovered a slow leak under the asphalt outside of the house.  Brender called Sanders Plumbing, a plumbing business that had done work for Brender several times in the past.  Employees of Sanders Plumbing used a backhoe to find the bad section of pipe.  Phillip Sanders, the owner of Sanders Plumbing, informed Brender that the pipe could either be repaired or replaced in its entirety.  Brender decided to have the pipe replaced, and Sanders explained that he would dig up the original pipe that ran from the water meter to the office and replace it.  Sanders called Brender later that day with a bid of $3,100 to excavate the old pipe, replace it with the new pipe, hook up the new pipe, and get it approved by the City of Fort Worth.  Brender agreed to have Sanders Plumbing replace the pipe.

During the two-week period that Sanders Plumbing was performing work at the house, the plumbers encountered numerous problems while replacing the water line.  Sanders testified that he or another employee of Sanders Plumbing explained to Brender each problem they encountered as it occurred and that Brender agreed to the extra work each time.  For example, Sanders testified that although Brender said the water pipe went into the back of the house, the plumbers spent two days trying to find the location where the pipe entered the house.  Sanders testified that the plumbers discovered a solid concrete structure used by a bank that operated in the house years ago and that the plumbers had to remove the concrete in order to run the water line to the building.  He explained that he and Brender discussed removing the concrete, as well as a large volume of rock that the plumbers discovered while digging up the old pipe, and that Brender knew removal of the concrete would increase the cost.  Sanders testified that while he was working on replacing the water line, Brender asked Sanders to move the garden hose connection and the backflow preventer on his property to another area on the property; Sanders testified that he explained to Brender that these processes would cost more money.
(footnote: 2)  Sanders explained that because the soil was so rocky, he had to pack the area around the pipe with sand according to the plumbing code and that he discussed the extra cost with Brender.
(footnote: 3) 

After Sanders Plumbing finished replacing the pipe and cleaning up the area, Sanders presented Brender with a bill for $14,421.27.  Brender and Sanders discussed the bill, and Brender paid Sanders $4,092.50—the initial bid of $3,100 plus $992.50 for the work done on the day that Sanders Plumbing first came out to Brender’s office. 

Sanders Plumbing filed suit against Brender on sworn account, quantum meruit, and assumpsit.  Brender filed a counterclaim against Sanders Plumbing for flood damage that the house sustained during the work, among other things. The jury rendered a verdict for Sanders Plumbing and awarded $5,963.65 in damages and $6,200.00 in attorney’s fees.  The jury also found for Brender on his negligence cause of action and awarded him $307.57.  The trial court entered judgment on the jury’s verdict.   

III.  Quantum Meruit

The trial court’s charge to the jury included, over Brender’s objection, the following questions: 

[Question No. 1:]  Did Sanders Plumbing, Inc. and Art Brender enter into an agreement in February, 1999, that Sanders Plumbing would replace the water line to Art Brender’s law office for the bid price of $3,100.00?

. . . . 

[Question No. 2:]  Did Art Brender agree to pay Sanders Plumbing, Inc. for any services to replace the water line that was over and above the $3,100.00 bid price?

. . . .

[Question No. 3:]  Did Art Brender fail to comply with his agreement?

. . . . 

[Question No. 4:]  Did Sanders Plumbing Inc. perform compensable work for Art Brender? 

The jury answered “yes” to each of the above four questions.  Additionally, the jury was instructed to answer Question No. 5 with regard to damages if it answered “yes” to Question No. 3 or 4.  In response to Question No. 5, the jury found that $5,963.65 “would fairly and reasonably compensate Sanders Plumbing Inc. for their damages, if any, that resulted from such performance of compensable services or Art Brender’s failure to comply.”
(footnote: 4) 

In his first issue, Brender asserts that Sanders Plumbing cannot recover under any theory for two reasons:  (1) Sanders Plumbing was precluded from recovering under a breach of contract theory because it failed to plead that theory and (2) Sanders Plumbing was precluded from recovering for quantum meruit because the jury found that a contract existed between the parties.  This argument seems to be internally inconsistent; Brender is claiming that the breach of contract questions were erroneously submitted but is also claiming that the jury’s answers to these allegedly erroneously submitted questions render the jury’s answers to the quantum meruit questions improper.

Assuming nonetheless that the trial court erred by submitting the breach of contract questions, and turning to a harm analysis, we may not reverse a judgment for error in the submission of jury instructions or questions unless we conclude that the error probably caused the rendition of an improper judgment.  
Wal-Mart Stores, Inc. v. Johnson
, 106 S.W.3d 718, 723 (Tex. 2003); 
Recognition Comm’ns Inc. v. Am. Auto. Ass’n, Inc
., 154 S.W.3d 878, 885 (Tex. App.—Dallas 2005,  pets. denied); 
see 
Tex. R. App. P.
 44.1(a)(1)
.  To determine whether an improper jury charge constitutes reversible error, we consider the pleadings, the evidence, and the charge in its entirety.   
Recognition Comm’ns Inc.
, 154 S.W.3d at 885.  Generally, error in the submission of a question is harmless when the jury findings in answer to other issues are sufficient to support the judgment, as long as the erroneously submitted question does not confuse or mislead the jury.  
Boatland of Houston, Inc. v. Bailey
, 609 S.W.2d 743, 750 (Tex. 1980).

In this case, the jury also found, in response to Question No. 4, that Sanders Plumbing performed compensable work for Brender, which supports recovery under the theory of quantum meruit.  
See Davis v. McQueen
, 842 S.W.2d 376, 380-81 (Tex. App.—Beaumont 1992, writ denied); 
Comm. On Pattern Jury Charges, State Bar of Texas, Texas Pattern Jury Charges 
PJC 101.42 (2003).  The right to recover in quantum meruit is based upon a promise implied by law to pay for beneficial services rendered and knowingly accepted.
  Black Lake Pipe Line Co. v. Union Constr. Co.
, 538 S.W.2d 80, 86 (Tex. 1976), 
overruled on other grounds by Sterner v. Marathon Oil Co.
, 767 S.W.2d 686 (Tex. 1989); 
Residential Dynamics, LLC v. Loveless
, 186 S.W.3d 192, 198-99 (Tex. App.—Fort Worth 2006, no pet.).  To recover under quantum meruit, the plaintiff must prove that 
(1) valuable services and/or materials were furnished, (2) to the parties sought to be charged, (3) which were accepted by the parties sought to be charged, and (4) under circumstances that reasonably notified the recipient that the complaining party, in performing, expected to be paid by the recipient.  
Heldenfels Bros., Inc. v. City of Corpus Christi
, 832 S.W.2d 39, 41 (Tex. 1992).  
If a valid express contract 
covering the subject matter 
exists, there can be no recovery upon a contract implied by law.  
Woodard v. Southwest States, Inc.
, 384 S.W.2d 674, 675 (Tex. 1964).  However, the existence of an express contract does not preclude recovery in quantum meruit for the reasonable value of services rendered and accepted that are not covered by the contract. 
 Black Lake Pipe Line Co.
, 538 S.W.2d at 86.

Here, the jury found that Brender and Sanders Plumbing agreed that Brender would pay Sanders Plumbing the bid price of $3,100, but the parties’ dispute is over whether Brender agreed to pay more than the bid price.  The jury found that Brender agreed to pay Sanders Plumbing over and above the $3,100 bid price, but the jury was not asked, nor did Brender request a finding on, what amount Brender agreed to pay Sanders Plumbing over and above the bid price.  This type of dispute is especially adapted to the doctrine of quantum meruit.  
See Davis
, 842 S.W.2d at 383 (holding that quantum meruit was applicable for extra work performed by plaintiff even though jury found an express contract because “the total amount of the compensation was never fixed by an express agreement”); 
Freeman v. Carroll
, 499 S.W.2d 668, 670 (Tex. Civ. App.—Tyler 1973, writ ref’d n.r.e.) (noting that when there is “some question under the evidence whether there was a meeting of the minds to establish a contract,” the plaintiff is entitled to plead and recover under quantum meruit); 
see
 
also Fortune Prod. Co. v. Conoco, Inc.
, 52 S.W.3d 671, 685 (Tex. 2000) (holding that when the existence of or the terms of a contract are in doubt and there is a claim for unjust enrichment, the disputing party must secure findings that an express contract exists covering the subject of the dispute).  

Although Brender’s testimony often contradicted that of Sanders concerning the “extra” work Sanders claims Brender authorized, the jury is the sole judge of the credibility of the witnesses.  
See City of Keller v. Wilson
, 168 S.W.3d 802, 819 (Tex. 2005).

For the above reasons, we hold that despite the jury’s answers to Question Nos. 2 and 3, Sanders Plumbing was not precluded from recovering under the doctrine of quantum meruit.  Thus, we hold that the trial court’s error, if any, in submitting these breach of contract questions to the jury was harmless because the jury’s finding in answer to the quantum meruit question was sufficient to support the judgment.  
See Boatland of Houston, Inc.
, 609 S.W.2d at 750;
 Recognition Comm’ns
 
Inc
., 154 S.W.3d at 885; 
cf. Johnson Aircrafts, Inc. v. Eichholtz
, 194 S.W.2d 815, 816-17 (Tex. Civ. App.—Fort Worth 1946, writ ref’d n.r.e.) (holding error in submitting questions on contract and quantum meruit was harmless when jury findings supported both theories).  We overrule Brender’s first issue. 

IV.  Evidence of Reasonableness of Charges 

In his second issue, Brender contends that the trial court erred by not excluding Sanders’s testimony on the reasonableness of plumbing charges because Sanders was not designated as an expert.  Consequently, Brender argues that because Sanders Plumbing offered no other expert testimony about the reasonableness of its charges, the trial court erred by submitting a damage question to the jury.  Sanders Plumbing contends that recovery in quantum meruit does not require independent expert testimony, as opposed to documentary evidence, of the reasonableness of the charges. 

To recover under the doctrine of quantum meruit, a plaintiff must establish, among other things, that valuable services and/or materials were furnished. 
 Heldenfels Bros., Inc.
, 832 S.W.2d at 41.  The proper measure of damages in a quantum meruit action is the reasonable value of the services rendered and materials furnished by the complaining party.  
PIC Realty Corp. v. Southfield Farms, Inc.
, 832 S.W.2d 610, 616 (Tex. App.—Corpus Christi, 1992, no writ).  To establish the right to recover reasonable charges, a claimant need not use the word “reasonable”; a claimant need only present sufficient evidence to justify a jury’s finding that the costs were reasonable.  
See Ebby Halliday Real Estate, Inc. v. Murnan
, 916 S.W.2d 585, 589 (Tex. App.—Fort Worth 1996, writ denied).  

Here, the record includes Sanders Plumbing’s Material and Labor Records, detailing the description of work done by Sanders Plumbing’s employees each day, including the name of the employee, the hourly rate for each employee, and the hours each employee worked.  Sanders’s unobjected to testimony
(footnote: 5) and the Material and Labor Records both show that Sanders charges $75 per hour for licensed plumbers and $22.50 per hour for other employees.  Sanders also testified, without objection, that he charges “per crew” and that a crew consists of two men and a truck.  Brender introduced into evidence a handwritten note that Sanders gave him detailing the number of hours Sanders’s employees worked each day, the cost of the sand and the backhoe used to move the sand, the cost to haul off the rock and concrete removed from the ground, as well the costs of other extra materials.  Brender also introduced into evidence invoices from previous plumbing work that Sanders Plumbing performed for Brender, which included the same $75 hourly rate for his work as the job at issue here. 

Although proof of the amounts charged alone may not raise an issue of reasonableness, the evidence here consists of more than merely the amounts charged.  
Cf. Mustang Pipeline Co. v. Driver Pipeline Co., 
134 S.W.3d 195, 201 (Tex. 2004) (holding that plaintiff failed to present evidence of reasonableness of out-of-pocket costs by presenting only evidence of amounts charged and paid).  Sanders Plumbing’s records separately listed the hourly rate for each employee, the number of hours each employee worked each day, the materials used, and the cost of the materials.  The billing rates reflected in Sanders Plumbing’s invoices for prior work performed for Brender also constitute some evidence that the same rates charged here were reasonable.  
See Electric Wire & Cable Co. v. Ray
, 456 S.W.2d 260, 263 (Tex. Civ. App.—Houston [14th Dist.] 1970, writ ref’d n.r.e.) (noting that contract prices were “some evidence of value” to recover damages on quantum meruit theory).  Consequently, we hold that the above evidence constituted sufficient evidence to enable the jury to confront and resolve the issue of fair and reasonable compensation for services and materials provided.  
See Vance v. My Apartment Steak House of San Antonio, Inc.
, 677 S.W.2d 480, 483-84 (Tex. 1984); 
Electric Wire & Cable Co.
, 456 S.W.2d at 263-64 (holding sufficient evidence existed regarding value of materials and labor through written correspondence between parties quoting prices for work to be done and through appellee’s testimony concerning documents);
 cf. Muller v. Light
, 538 S.W.2d 487, 487 (Tex. Civ. App.—Austin 1976, writ ref’d n.r.e.) (holding that “[al]though . . . [he] was unable to provide bills or records of his costs for materials and labor,” his testimony as to the fair value of the labor and materials involved in the extra work raised fact issues as to the fair and reasonable value of the labor and materials).  Thus, we hold that the trial court did not abuse its discretion by submitting a question on fair and reasonable compensation to the jury.  
See 
Tex. R. Civ. P. 
278 (requiring trial court to submit questions raised by pleadings and evidence); 
In re V.L.K.
, 24 S.W.3d 338, 341 (Tex. 2000) (applying an abuse of discretion standard to trial court’s submission of jury question).  We overrule Brender’s second issue.

V.  Harmless Improper Jury Argument
 

During closing argument, Sanders Plumbing’s trial counsel stated in his rebuttal argument,

Mr. Brender is coming before you, and he’s a lawyer.  He knows all of the tricks of contract law.  He knows all of the tricks of construction law.  He is a lawyer.  I dare say he would expect to get paid every time he does work for someone.

But let’s not do the spin-miester [sic] trick here.  I’m not going to do that.  Y’all have heard the evidence . . . . 

Let us assume, for sake of argument, that the spin-master [sic] is correct on those documents –

Brender’s trial counsel objected to opposing counsel’s calling him a spinmeister, the trial court sustained the objection, and opposing counsel immediately withdrew the statement.  Brender did not ask for a curative instruction or move for a mistrial.  He later filed a motion for new trial based on the above argument. 

In his third issue, Brender argues that the trial court erred by not granting Brender’s motion for new trial because trial counsel for Sanders Plumbing engaged in improper jury argument by calling Brender’s trial counsel a “spinmeister.”  Sanders Plumbing argues that Brender failed to preserve this issue for appeal by not requesting a curative instruction. 

Generally, in order to obtain a reversal for an improper jury argument, the appellant must prove that (1) there is error in the argument, (2) it was not invited or provoked, (3) the error was preserved by an objection, motion for mistrial, or motion to instruct, (4) the error was not curable by instruction, reprimand by the judge, or proper withdrawal of the statement, and (5) the argument by its nature, degree, and extent constituted reversible harmful error. 
 Standard Fire Ins. Co. v. Reese
, 584 S.W.2d 835, 839 (Tex. 1979).  

An objection is not required in order to preserve error if the error is deemed to be incurable, and a motion for new trial is sufficient to preserve a complaint of incurable jury argument.  
See
 
Tex. R. Civ. P. 
324(b)(5); 
Warrantech Corp. v. Computer Adapters Servs., Inc.
, 134 S.W.3d 516, 531 n.10 (Tex. App.—Fort Worth 2004, no pet.).  The test for incurable error in jury argument is whether the argument, when viewed in light of the entire record, was so inflammatory as to strike at the heart of the adversarial process or appeal to fundamental prejudices. 
 Boone v. Panola County
, 880 S.W.2d 195, 198 (Tex. App.—Tyler 1994, no writ); 
see Circle Y of Yoakum v. Blevins
, 826 S.W.2d 753, 758 (Tex. App.—Texarkana 1992, writ denied) (holding improper argument was incurable where attorney accused opposing counsel of manufacturing evidence and perjury), 
abrogated in part on other grounds by State Farm Fire & Cas. Co. v. Morua
, 979 S.W.2d 616, 621 (Tex. 1998); 
Tex. Employers' Ins. Ass'n v. Guerrero
, 800 S.W.2d 859, 866-67 (Tex. App.—San Antonio 1990, writ denied) (holding improper argument was incurable where argument intentionally appealed to prejudice against a party's ethnicity).  In such a case, an instruction to the jury to disregard the argument would not eliminate the probability that an improper verdict resulted from the error.
 Williams v. Lavender
, 797 S.W.2d 410, 413 (Tex. App.—Fort Worth 1990, writ denied).

In the present case, before trial counsel for Sanders Plumbing called opposing counsel a spinmeister, Brender’s trial counsel stated in his closing arguments that Brender has been married thirty-five years, has contributed to the community, and has paid his bills and lived up to his word.  He went on to quote from the Bible—“thou shall not bear false witness,” and discussed how Sanders changed his story four times.  We assume Sanders Plumbing’s trial counsel was referencing the above statements when he used the term “spinmeister.”
(footnote: 6)  Criticism, censure, abuse of counsel, and appeals to passion and prejudice are not permitted in jury argument, but calling opposing counsel a spinmeister does not rise to the level of accusing him of manufacturing evidence, suborning perjury, or lying.  
See id.
  It is apparent that the complained of statement 
was not so inflammatory as to strike at the heart of the adversarial process or appeal to fundamental prejudices and, consequently, did not rise to the level of incurable jury argument. 
 See Boone
, 880 S.W.2d at 198; 
cf. Circle Y of Yoakum
, 826 S.W.2d at 758.  Consequently, we overrule Brender’s third issue.

VI. Brender’s Court Costs

In response to Jury Question Nos. 9-10, the jury found that the negligence of Sanders Plumbing was the proximate cause of economic loss to Brender and that $377.61 would fairly and reasonably compensate Brender for his loss.  The trial court’s final judgment ordered Sanders Plumbing to pay Brender $417.59—that is, the $377.61 plus interest.  The final judgment ordered Brender to pay for the court costs of Sanders Plumbing, but it did not order Sanders Plumbing to pay Brender’s court costs. 

 In Brender’s fourth issue, he contends that because he prevailed on his negligence counterclaim, the trial court erred by not ordering Sanders Plumbing to pay Brender for his court costs.  Specifically, Brender contends that Sanders Plumbing should have been ordered to pay Brender the amount of $409.75, the cost of the deposition of Phillip Sanders. 

The “successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided.”  
Tex. R. Civ. P. 
131. A successful party is defined as “one who obtains a judgment of a competent court vindicating a civil claim of right.”  
See Mixon v. Nat’l Union Fire Ins. Co.
, 806 S.W.2d 332, 335 (Tex. App.—Fort Worth 1991, writ denied).  The trial court has broad discretion to assess costs and its decision will not be overturned absent an abuse of discretion.  
Univ. of Houston-Clear Lake v. Marsh
, 981 S.W.2d 912, 914 (Tex. App.—Houston [1st Dist.] 1998, no writ).  A trial judge must allocate costs according to the provisions of rule 131 unless it makes a finding of good cause.  
Id.
 

Rule 303 governs the recovery of costs in cases involving counterclaims:

When a counterclaim is pleaded, the party in whose favor final judgment is rendered shall also recover the costs, unless it be made to appear on the trial that the counterclaim of the defendant was acquired after the commencement of the suit, in which case, if the plaintiff establishes a claim existing at the commencement of the suit, he shall recover his costs.

Tex. R. Civ. P.
 303.  Texas courts applying Rule 303 have determined that in suits involving claims and counterclaims, the party receiving the larger award is entitled to final judgment and recovery of costs. 
 See Chilton Ins. Co. v. Pate & Pate Enters., Inc.
, 930 S.W.2d 877, 895 (Tex. App.—San Antonio 1996, writ denied); 
Rio Grande Valley Sugar Growers, Inc. v. Campesi
, 580 S.W.2d 850, 865-66 (Tex. Civ. App.—Corpus Christi), 
rev'd on other grounds
, 592 S.W.2d 340 (Tex. 1979).

Here, although Brender prevailed on his counterclaim for negligence, Sanders Plumbing was the party “in whose favor [the] final judgment [was] rendered.”  
Tex. R. Civ. P.
 303.  Thus, we hold that the trial court did not abuse its discretion by not awarding court costs to Brender.  
See id.
;
 Chilton Ins. Co.
, 930 S.W.2d at 895; 
Rio Grande Valley Sugar Growers, Inc.
, 580 S.W.2d at 865-66.  We overrule Brender’s fourth issue.

VII.  Conclusion

Having overruled each of Brender’s four issues, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL A: CAYCE, C.J.; HOLMAN and WALKER, JJ.

CAYCE, C.J. concurs without opinion.

DELIVERED:  July 20, 2006

FOOTNOTES
1:
See
 
Tex. R. App. P
. 47.4.

2:
On cross-examination, Sanders testified that while digging, employees of Sanders Plumbing hit the sprinker system and that Sanders agreed to repair it. 

3:
In fact, Sanders testified that Brender instructed Sanders to first try to get the pipes to pass inspection without using sand because of the extra cost of bringing in sand.

4:
The jury was instructed that, in arriving at this number, they were to deduct any offsets or credits due Brender for payments he made to Sanders Plumbing.

5:
Brender claims that he objected to Sanders testifying as an expert.  We have reviewed the record, however, and Brender’s only objection to Sanders’s testimony occurred as follows.  During Sanders’s direct examination, Sanders’s counsel asked, “From the exhibits presented and your testimony, are you telling this [j]ury that Mr. Brender owes you $10,328.72?”  Sanders objected that the question called for expert testimony and that Sanders had not been designated as an expert.  The trial court overruled the objection.  This single objection to the specific question quoted above does not constitute an objection to Sanders’s entire testimony, specifically Sanders’s testimony concerning the Material and Labor Records.  
See
 
Tex. R. App. P.
 33.1(a).  

6:
A spinmeister is someone “who tries to forestall negative publicity by publicizing a favorable interpretation of the words or actions of a company or political party or famous person.”  Dictionary.com, http://dictionary.reference.com/browse/spinmeister (last visited July 18, 2006).